**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SHLOMO LEIBOVITCH, et al.,

                    Plaintiffs,

      v.                                  No. 08-cv-01939

THE SYRIAN ARAB REPUBLIC, et al.,

                    Defendants.

## NOTICE OF PENDING ACTION

TO THE CLERK OF THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS:

       You are hereby respectfully notified that this action was instituted by a complaint filed in this Court on April 3, 2008, pursuant to 28 U.S.C. §1605A, a copy of which Complaint is attached to this Notice of Pending Action.

       Pursuant to 28 U.S.C. §1605A(g)(1), a lien of lis pendens is hereby established upon all real property and tangible personal property that is subject to attachment in aid of execution, or execution, under 28 U.S.C. §1610, located within this judicial district and titled in the name of any of the defendants: The Syrian Arab Republic; The Syrian Ministry of Defense, Mustafa Tlass; Syrian Military Intelligence; Hassan Khalil; Assef Shawkat; Ali Douba; The Syrian Air Force Intelligence Directorate; Ibrahim Hueiji; The Islamic Republic of Iran; The Iranian Ministry of Information and Security; Ayatollah Ali Hoseini Khamenei; and/or Ali Yunesi.

       You are hereby respectfully requested to file this Notice of Pending Action in the same manner as any pending action, indexed by listing as defendants all named defendants, as required by 28 U.S.C. §1605A(g)(2).

Dated: April 8, 2008

                                    Shlomo Leibovitch, Galit Leibovitch,
Shira Leibovitch, Moshe Leibovitch,
Nerya Leibovitch, Hila Leibovitch
Shmuel Eliad and Miriam Eliad

By: s/ Robert D. Cheifetz
One of plaintiffs' attorneys

Robert D. Cheifetz
Daniel A. Shmikler
Sperling & Slater, P.C.
55 West Monroe Street, Suite 3200
Chicago, IL 60603
(312) 641-3200
(312) 641-6492 (fax)
Local counsel

David J. Strachman
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlhlaw.com

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **SHLOMO LEIBOVITCH**, individually, ) | |
| as personal representative of the Estate of Noam ) | **FILED: APRIL 3, 2008** |
| Leibovitch, and as natural guardian of plaintiffs ) | **08CV1939        EDA** |
| Shira Leibovitch, Moshe Leibovitch and Nerya ) | **JUDGE HART** |
| Leibovitch; **GALIT LEIBOVITCH**, individually, ) | **MAGISTRATE JUDGE MASON** |
| as personal representative of the Estate of Noam ) | |
| Leibovitch, and as natural guardian of plaintiffs ) | |
| Shira Leibovitch, Moshe Leibovitch and Nerya ) | |
| Leibovitch; **SHIRA LEIBOVITCH**, a minor, by her ) | |
| guardians, Shlomo Leibovitch and Galit Leibovitch; ) | |
| **MOSHE LEIBOVITCH**; a minor, by his guardians, ) | |
| Shlomo Leibovitch and Galit Leibovitch; **NERYA** ) | |
| **LEIBOVITCH**, a minor, by her guardians Shlomo ) | |
| Leibovitch and Galit Leibovitch; **HILA** ) | |
| **LEIBOVITCH**; **SHMUEL ELIAD**; and **MIRIAM** ) | |
| **ELIAD** ) | |
| ) | |
| Plaintiffs, ) | Case No. |
| ) | |
| vs. ) | |
| ) | |
| **THE SYRIAN ARAB REPUBLIC**, ) | |
| c/o Foreign Minister Walid al-Mualem ) | |
| Ministry of Foreign Affairs Shora, Muhajireen, ) | |
| Damascus, Syria; **THE SYRIAN MINISTRY** ) | |
| **OF DEFENSE**, Omayad Square, Damascus, Syria; ) | |
| **MUSTAFA TLASS**, Syrian Ministry of Defense, ) | |
| Omayad Square, Damascus, Syria; **SYRIAN** ) | |
| **MILITARY INTELLIGENCE** (aka Shu'bat ) | |
| al-Mukhabarat al-'Askariyya), Syrian Ministry of Defense, ) | |
| Omayad Square, Damascus, Syria; **HASSAN KHALIL**, ) | |
| Commander, Syrian Military Intelligence (aka Shu'bat ) | |
| al-Mukhabarat  al-'Askariyya) Syrian Ministry of Defense ) | |
| Omayad Square Damascus, Syria; **ASSEF SHAWKAT**, ) | |
| Syrian Military Intelligence (aka Shu'bat) ) | |
| al-Mukhabaratal-'Askariyya) Syrian Ministry of ) | |
| Defense, Omayad Square, Damascus, Syria; **ALI** ) | |
| **DOUBA**, Syrian Military Intelligence (aka Shu'bat ) | |
| al-Mukhabarat al-'Askariyya) Syrian Ministry ) | |
| of Defense, Omayad Square, Damascus, Syria; **THE** ) | |
| **SYRIAN AIR FORCE INTELLIGENCE** ) | |
| **DIRECTORATE** (aka Idarat al-Mukhabarat al- ) | |
| Jawiyya), Syrian Ministry of Defense, Omayad Square, ) | |

Damascus, Syria; **IBRAHIM HUEIJI,** Commander )
Syrian Air Force Intelligence Directorate (aka Idarat )
al-Mukhabarat al-Jawiyya) Syrian Ministry of Defense, )
Omayad Square, Damascus, Syria; **SYRIAN DOES** )
**1-10,** Damascus, Syria; **THE ISLAMIC REPUBLIC** )
**OF IRAN**, Ministry of Foreign Affairs, Khomeini Ave. )
United Nations St., Teheran, Iran; **THE IRANIAN** )
**MINISTRY OF INFORMATION AND** )
**SECURITY**, Pasdaran Ave., Golestan Yekom Teheran,)
Iran; A**YATOLLAH ALI HOSEINI KHAMENEI**,)
Supreme Leader of the Islamic Republic of Iran )
Office of the Supreme Leader, Palestine St., Teheran, )
Iran; **ALI YUNESI**, c/o the Iranian Ministry of )
Information and Security, Pasdaran Ave. Golestan )
Yekom Teheran, Iran; **IRANIAN DOES 1-10**, )
Teheran, Iran; and **PALESTINE ISLAMIC JIHAD**, )
Damascus, Syria )
)
                         Defendants. )

## COMPLAINT

Plaintiffs, by counsel, complain of the Defendants and allege for their Complaint as follows:

## INTRODUCTION

1.     This is a civil action for wrongful death, personal injury and related torts pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §1602 *et seq*., and the Antiterrorism Act, 18 U.S.C. §2333, arising from a terrorist shooting attack carried out on June 17, 2003, near Eyal Junction, Israel (the "Terrorist Attack").

2.     Decedent Noam Leibovitch, seven years old, was murdered in the Terrorist Attack, and her sister, plaintiff Shira Leibovitch, a U.S. citizen then three years old, was severely injured in the Terrorist Attack.

3.     The Terrorist Attack was carried out by defendant Palestine Islamic Jihad ("PIJ") using material support and resources provided by defendants Syrian Arab Republic ("Syria") and Islamic Republic of Iran ("Iran").

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter and over the defendants pursuant to 28 U.S.C. §§ 1330, 1331, 1332(a)(2), 1605A(a)(1), 1605A(c) and 18 U.S.C. §2331 *et seq.*, and pursuant to the rules of supplemental jurisdiction. Venue is proper in this Court pursuant to 18 U.S.C. §2334(a).

## THE PARTIES

5.      Plaintiffs Shlomo Leibovitch and Galit Leibovitch at all times relevant hereto are and were the parents, heirs and personal representatives of the estate of decedent Noam Leibovitch, who was murdered in the Terrorist Attack, and the parents of plaintiffs Shira Leibovitch, Moshe Leibovitch, Nerya Leibovitch and Hila Leibovitch. Plaintiffs Shlomo Leibovitch and Galit Leibovitch bring this action individually, on behalf of the estate of Noam Leibovitch, and as natural guardians of their minor children plaintiffs Shira Leibovitch, Moshe Leibovitch and Nerya Leibovitch.

6.      Plaintiff Shira Leibovitch, minor, at all times relevant hereto is and was an American citizen and the sister of decedent Noam Leibovitch. Plaintiff Shira Leibovitch was severely injured in the Terrorist Attack.

7.      Plaintiffs Moshe Leibovitch, minor, Nerya Leibovitch, minor and Hila Leibovitch, at all times relevant hereto, are and were the siblings of decedent Noam Leibovitch and plaintiff Shira Leibovitch.

8.      Plaintiffs Shmuel Eliad and Miriam Eliad are the parents of Galit Leibovitch and the grandparents of decedent Noam Leibovitch and plaintiff Shira Leibovitch.

9.      Defendant The Syrian Arab Republic (hereinafter "Syria") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. §1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. §2405(j)). Syria provided material support and resources for the commission of acts of extrajudicial killing, within the meaning of 28 U.S.C. §1605A, including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

10.      Defendant The Syrian Ministry of Defense (hereinafter "SMD") is, and at all times relevant hereto was, responsible for operating and controlling Syria's armed forces and intelligence services. Within the scope of its agency and office, SMD provided material support and resources for the commission of acts of extrajudicial killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

11.      Defendant Mustafa Tlass (hereinafter "Tlass") at all times relevant hereto was the Syrian Minister of Defense and an official, employee and agent of Syria and SMD. Within the scope of his office, employment and agency, Tlass provided material support and resources for the commission of acts of extrajudicial killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

12.      Defendant Syrian Military Intelligence, also known as Shu'bat al-Mukhabarat al-Askariyya, (hereinafter "SMI") is, and at all times relevant hereto was, Syria's military intelligence agency. Within the scope of its agency and office, SMI provided material support and resources for the commission of acts of extrajudicial

killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

13. Defendant Hassan Khalil (hereinafter "Khalil") is, and at all times relevant hereto was, the commander of SMI and an official, employee and agent of Syria, SMD and SMI. Within the scope of his office, employment and agency, Khalil provided material support and resources for the commission of acts of extrajudicial killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

14. Defendant Assef Shawkat (hereinafter "Shawkat") is, and at all times relevant hereto was, the deputy commander of SMI and an official, employee and agent of Syria, SMD and SMI. Within the scope of his office, employment and agency, Shawkat provided material support and resources for the commission of acts of extrajudicial killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

15. Defendant Ali Douba (hereinafter "Douba") is the former commander of SMI and an official, employee and agent of Syria, SMD and SMI. Within the scope of his office, employment and agency, Douba provided material support and resources for the commission of acts of extrajudicial killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

16. Defendant The Syrian Air Force Intelligence Directorate, also known as Idarat al-Mukhabarat al-Jawiyya, (hereinafter "SAFID") is, and at all times relevant hereto was, an agency of defendant Syria specifically assigned to plan, fund, facilitate and carry out terrorist attacks. Within the scope of its agency and office, SAFID provided

material support and resources for the commission of acts of extrajudicial killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

17.     Defendant Ibrahim Hueiji (hereinafter "Hueiji") is, and at all times relevant hereto was, the commander of SAFID and an official, employee and agent of Syria, SMD and SAFID. Within the scope of his office, employment and agency, Hueiji provided material support and resources for the commission of acts of extrajudicial killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

18.     Defendants Syrian Does 1-10 are, and at all times relevant hereto were, officials, employees and agents of Syria, who within the scope of their office, employment and agency provided material support and resources for the commission of acts of extrajudicial killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

19.     Defendant Islamic Republic of Iran (hereinafter "Iran") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. §1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. §2405(j)). Iran provided material support and resources for the commission of acts of extrajudicial killing, within the meaning of 28 U.S.C. §1605A, including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

20.     Defendant The Iranian Ministry of Information and Security ("MOIS") is the Iranian intelligence service. Within the scope of its agency and office, SMI provided

material support and resources for the commission of acts of extrajudicial killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

21.     Defendant Ayatollah Ali Hoseini Khamenei ("Khamenei") is the Supreme Leader of Iran and an official, employee and agent of Iran. Within the scope of his office, employment and agency, Khamenei provided material support and resources for the commission of acts of extrajudicial killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

22.     Defendant Ali Yunesi ("Yunesi") was Iran's Minister of Information and Security and an official, employee and agent of Iran during the period between 1999 and the date of the Terrorist Attack. Within the scope of his office, employment and agency, Yunesi provided material support and resources for the commission of acts of extrajudicial killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein

23.     Defendants Iranian Does 1-10 are, and at all times relevant hereto were, officials, employees and agents of Iran, who within the scope of their office, employment and agency provided material support and resources for the commission of acts of extrajudicial killing including the Terrorist Attack, and performed other actions that caused the Terrorist Attack and harm to the plaintiffs herein.

24.     Defendant Palestine Islamic Jihad is a terrorist organization headquartered in Damascus, Syria.

## STATEMENT OF FACTS

### The Palestine Islamic Jihad

25.     The Palestine Islamic Jihad was formed in the Gaza Strip during the 1970s. The PIJ's goal is the creation of an Islamic state in the territory of Israel, the West Bank and the Gaza Strip, and the destruction of the State of Israel and the murder or expulsion of its Jewish residents. The PIJ seeks to achieve this goal by carrying out terrorist attacks against Israeli targets.

26.     Over the past 15 years numerous United States citizens have been murdered or injured in terrorist attacks carried out by the PIJ in Israel, the West Bank and the Gaza Strip.

27.     The PIJ has been designed by the United States as a Foreign Terrorist Organization continuously since 1997 and as a Specially Designated Global Terrorist continuously since 2001.

### Syria's Provision of Material Support and Resources to the PIJ

28.     Since 1979 until the present time, defendant Syria has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. §2405(j)).

29.     During the period relevant hereto, including the several year period immediately preceding the Terrorist Attack, defendants Syria, SMD, Tlass, SMI, Khalil, Shawkat, Douba, SAFID, Hueiji and Syrian Does 1-10 ("Syrian defendants") provided the PIJ with material support and resources within the meaning of 28 U.S.C. §1605A(a)(1), described in detail below, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism

8

including the Terrorist Attack. Such support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Syria, in order to assist the PIJ achieve goals shared by Syria. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness.

30.     The Syrian defendants provided the material support and resources detailed below to the PIJ pursuant to an agreement reached between Syria and the PIJ in the late 1980s which remains in force until today. Under that agreement, the PIJ undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Syria undertook to provide the PIJ with material support and resources to carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement was to achieve the goals detailed in the preceding paragraph.

31.     The material support and resources which were provided by the Syrian defendants to the PIJ in the years immediately prior to the Terrorist Attack for the purpose of facilitating acts of extrajudicial killing and terrorism included *inter alia*: provision of financial support to the PIJ for the purpose of carrying out terrorist attacks; provision of military-grade explosives, military firearms and other weapons and matériel to the PIJ; provision of specialized and professional military training for the planning and execution of terrorist attacks (hereinafter: "terrorist training") to the PIJ; providing use of Syria-owned and operated training bases and military facilities in which terrorist training was provided to the PIJ and its terrorist operatives; providing the PIJ and its terrorist operatives with safe haven and refuge from capture in Syria and in areas of Lebanon controlled by Syria; providing the PIJ means of electronic communication and electronic

communications equipment for carrying out terrorist attacks; financial services, including banking and wire transfer services, provided to the PIJ by financial institutions owned and controlled by Syria at Syria's direction, which services were intended to and did enable the PIJ to surreptitiously transfer funds used to finance terrorist attacks; and means of transportation, including allowing terrorist operatives of the PIJ passage and transportation on Syrian-owned aircraft to allow them to avoid detection and carry out further terrorist attacks.

32. At all times relevant hereto, the Syrian defendants provided the PIJ and its terrorist operatives with terrorist training at military training bases, camps and facilities operated and/or funded and/or controlled by the Syrian defendants and located in Syria and in areas of Lebanon controlled by Syria, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. This terrorist training, which was professional and extensive and included the use of explosives, firearms and other weapons, was provided by and through Syrian military and intelligence officials, and other agents, employees and officials of the Syrian defendants acting within the scope of their agency and employment and under the express command and authorization of the Syrian defendants.

33. In addition, at all times relevant hereto, the Syrian defendants provided terrorist training, weapons, and funds to be used to carry out terrorist attacks to the PIJ and its terrorist operatives, by and through the agency of other terrorist organizations which received material support and resources from the Syrian defendants, and which acted as instrumentalities, agents and proxies of the Syrian defendants for the purpose of providing terrorist training and other material support and resources to the PIJ.

34.    At all times relevant hereto, the Syrian defendants provided the PIJ and its terrorist operatives with lodging, safe haven and shelter in Syria and in areas of Lebanon controlled by Syria, with the specific intention of preventing their apprehension and permitting them to plan and carry out acts of extrajudicial killing and international terrorism freely and unhindered. This lodging, safe haven and shelter was provided on military bases and facilities, and in residences, owned and controlled by Syria.

35.    The Syrian defendants gave substantial aid, assistance and encouragement to one another and to the PIJ, and provided the massive material support and resources described above to the PIJ, and thereby aided and abetted the PIJ, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. The Syrian defendants did so with actual knowledge that the PIJ had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to the PIJ.

36.    The Syrian defendants knowingly and willingly conspired, agreed and acted in concert with one another and with the PIJ, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. The Syrian defendants did so with actual knowledge that the PIJ had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with the PIJ.

37.     At all times relevant hereto, defendants SMD, SMI and SAFID were agencies, instrumentalities and/or offices of defendant Syria, and performed acts on behalf of defendant Syria, in furtherance of the interests and policy of defendant Syria and within the scope of their agency and office, within the meaning of 28 U.S.C. §1605A(a)(1) and 28 U.S.C. §1605A(c), which caused the Terrorist Attack and harm to the plaintiffs herein, in that defendants SMD, SMI and SAFID implemented and acted as conduits and instrumentalities for Syria's provision of funds, terrorist training and other material support and resources to the PIJ for the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack.

38.     Defendant Syria authorized, ratified and approved the acts of defendants SMD, SMI and SAFID.

39.     Accordingly, defendant Syria is vicariously liable for the acts of defendants SMD, SMI and SAFID.

40.     At all relevant times, defendants Tlass, Khalil, Shawkat, Douba, Hueiji and Syrian Does 1-10 were agents, officers and employees of defendants Syria, SMD, SMI and SAFID, and performed acts on behalf of defendants Syria, SMD, SMI and SAFID, in furtherance of the interests and policy of defendant Syria, SMD, SMI and SAFID and within the scope of their agency and office, within the meaning of 28 U.S.C. §1605A(a)(1) and 28 U.S.C. §1605A(c), which caused the Terrorist Attack and harm to the plaintiffs herein, in that defendants Tlass, Khalil, Shawkat, Douba, Hueiji and Syrian Does 1-10 authorized, planned and caused the provision of funds, terrorist training and other material support and resources by Syria, SMD, SMI and SAFID to the PIJ for the

commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack.

41.     Defendants Syria, SMD, SMI and SAFID authorized, ratified and approved the acts of defendants Tlass, Khalil, Shawkat, Douba, Hueiji and Syrian Does 1-10.

42.     Accordingly, defendants Syria, SMD, SMI and SAFID are vicariously liable for the acts of defendants Tlass, Khalil, Shawkat, Douba, Hueiji and Syrian Does 1-10.

**Iran's Provision of Material Support and Resources to the PIJ**

43.     Since 1984 until the present time, defendant Iran has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. §2405(j)).

44.     During the period relevant hereto, including the several year period immediately preceding the Terrorist Attack, defendants Iran, MOIS, Khamenei, Yunesi and Iranian Does 1-10 ("Iranian defendants") provided the PIJ with massive financial support with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. Such financial support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Iran, in order to assist the PIJ achieve goals shared by Iran. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness.

45.     The Iranian defendants provided this financial support to the PIJ pursuant to an agreement reached between Iran and the PIJ in the 1980s which remains in force until today. Under that agreement, the PIJ undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Iran undertook to provide the PIJ with financial support to carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement was to achieve the goals detailed in the preceding paragraph.

46.     The Iranian defendants gave substantial aid, assistance and encouragement to one another and to the PIJ, and provided massive financial support the PIJ, and thereby aided and abetted the PIJ, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. The Iranian defendants did so with actual knowledge that the PIJ had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to the PIJ.

47.     The Iranian defendants knowingly and willingly conspired, agreed and acted in concert with one another and with the PIJ, in pursuance of the common plan, design, agreement and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack. The Iranian defendants did so with actual knowledge that the PIJ had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with the PIJ.

48.     At all times relevant hereto, defendant MOIS was an agency, instrumentality and/or office of defendant Iran, and performed acts on behalf of defendant Iran, in furtherance of the interests and policy of defendant Iran and within the scope of its agency and office, within the meaning of 28 U.S.C. §1605A(a)(1) and 28 U.S.C. §1605A(c), which caused the Terrorist Attack and harm to the plaintiffs herein, in that defendant MOIS implemented and acted as a conduit and instrumentality for Iran's provision of funds to the PIJ for the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack.

49.     Defendant Iran authorized, ratified and approved the acts of defendant MOIS.

50.     Accordingly, defendant Iran is vicariously liable for the acts of defendant MOIS.

51.     At all relevant times, defendants Khamenei, Yunesi and Iranian Does 1-10 were agents, officers and employees of defendant Iran and performed acts on behalf of defendant Iran, in furtherance of the interests and policy of defendant Iran within the scope of their agency and office, within the meaning of 28 U.S.C. §1605A(a)(1) and 28 U.S.C. §1605A(c), which caused the Terrorist Attack and harm to the plaintiffs herein, in that defendants Khamenei, Yunesi and Iranian Does 1-10 authorized, planned and caused the provision of funds by Iran to the PIJ for the commission of acts of extrajudicial killing and international terrorism including the Terrorist Attack.

52.     Defendant Iran authorized, ratified and approved the acts of defendants Khamenei, Yunesi and Iranian Does 1-10.

53. Accordingly, defendant Iran is vicariously liable for the acts of defendants Khamenei, Yunesi and Iranian Does 1-10.

## THE TERRORIST ATTACK

54. On an unknown date or dates before June 17, 2003, the PIJ planned, conspired and made preparations to murder and injure innocent Jewish civilians by means of a terrorist machine-gun attack on a civilian vehicle traveling on the Trans-Israel Highway in Israel.

55. Pursuant to the aforementioned plan, on the evening of June 17, 2003, three trained agents, operatives and employees of the PIJ ("PIJ Gunmen") crossed from the West Bank into Israel and laid an ambush along the Trans-Israel Highway, just west of the town of Kalkilya.

56. The PIJ chose to carry out the terrorist machine-gun attack on the Trans-Israel Highway with actual knowledge that hundreds of American citizens and their close family members travel that road daily.

57. At approximately 11:15 PM on June 17, 2003, the PIJ Gunmen opened unprovoked fire from a Kalashnikov machine-gun and two pistols on a Mazda MPV family passenger car traveling on the Trans-Israel Highway.

58. Decedent Noam Leibovitch and plaintiffs Shlomo Leibovitch, Galit Leibovitch, Shira Leibovitch, Moshe Leibovitch, Hila Leibovitch, Shmuel Eliad and Miriam Eliad were riding in that Mazda MPV.

59. Approximately 15 bullets hit the Mazada MPV, some of which struck Noam Leibovitch and Shira Leibovitch.

60.     Noam Leibovitch lost consciousness and died of her wounds at the scene in the presence of her parents, siblings and grandparents. She was seven years old.

61.     Shira Leibovitch, then three years old, sustained serious injuries in the attack and has been left permanently disabled.

62.     The Syrian defendants and the Iranian defendants conspired and acted in concert with the PIJ, in pursuit of their common goals, design and agreements with the PIJ, discussed above, to carry out the Terrorist Attack on June 17, 2003, and other such acts of extrajudicial killing and international terrorism, and that Terrorist Attack was carried out by the PIJ further to and as implementation of its aforementioned agreement and conspiracy with the Syrian defendants and the Iranian defendants.

63.     The PIJ carried out the Terrorist Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the Syrian defendants and the Iranian defendants for the specific purpose of carrying out that attack and other such acts of extrajudicial killing and international terrorism.

**FIRST COUNT**
**ON BEHALF OF ALL PLAINTIFFS**
**AGAINST THE SYRIAN DEFENDANTS AND THE IRANIAN DEFENDANTS**
**ACTION FOR DAMAGES UNDER 28 U.S.C. §1605A(c)**

64.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

65.     Syria is a foreign state that since 1979 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. §1605A.

66.     Iran is a foreign state that since 1984 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. §1605A.

67.     The Syrian defendants and the Iranian defendants provided material support and resources, within the meaning of 28 U.S.C. §1605A, which caused and facilitated the Terrorist Attack.

68.     Defendants SMD, SMI and SAFID, Tlass, Khalil, Shawkat, Douba, Hueiji and Syrian Does 1-10 are officials, employees, and/or agents of Syria, and they provided the material support and resources which caused and facilitated the Terrorist Attack within the scope of their office, employment and/or or agency.

69.     Defendants MOIS, Khamenei, Yunesi and Iranian Does 1-10 are officials, employees, and/or agents of Iran and they provided the material support and resources which caused and facilitated the Terrorist Attack within the scope of their office, employment and/or or agency

70.     The Terrorist Attack was an extrajudicial killing within the meaning of 28 U.S.C. §1605A.

71.     Decedent Noam Leibovitch was murdered in the Terrorist Attack. The murder of Noam Leibovitch caused decedent, her estate and plaintiffs Shlomo Leibovitch, Galit Leibovitch, Shira Leibovitch, Moshe Leibovitch, Nerya Leibovitch, Hila Leibovitch, Shmuel Eliad and Miriam Eliad severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

72.     Plaintiff Shira Leibovitch suffered severe physical and psychological injuries as a result of the Terrorist Attack, including: disfigurement; bullet wounds; loss of physical and mental functions; extreme pain and suffering; loss of guidance,

companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of solatium; and loss of future income.

73. The injuries suffered by plaintiff Shira Leibovitch in the Terrorist Attack caused plaintiffs Shlomo Leibovitch, Galit Leibovitch, Shira Leibovitch, Moshe Leibovitch, Nerya Leibovitch, Hila Leibovitch, Shmuel Eliad and Miriam Eliad severe harm, including: loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of  solatium; and pecuniary loss and loss of income.

74. The harm and injuries suffered by the plaintiffs were the direct and proximate result of the conduct of the Syrian defendants and the Iranian defendants described herein.

75. The Syrian defendants and the Iranian defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages under 28 U.S.C. §1605A(c), in such sums as may hereinafter be determined.

76. The conduct of the Syrian defendants and the Iranian defendants was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. §1605A(c).

**SECOND COUNT**
**ON BEHALF OF ALL PLAINTIFFS AGAINST DEFENDANT PIJ**
**INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. §2333**

77. The preceding paragraphs are incorporated by reference as though fully set forth herein.

78.     The actions of defendant PIJ constitute a violation of the criminal laws of the United States and of the several states, or would constitute criminal violations if committed within the jurisdiction of the United States and of the several states.

79.     The actions of defendant PIJ were intended to intimidate or coerce a civilian population, and to influence the policy of a government by intimidation or coercion, within the meaning of 18 U.S.C. §2331, as defendant PIJ, through its representatives, spokesmen and publications: (a) repeatedly advocated, praised and lauded acts of terrorism and violence in Israel, admitted to committing such acts and expressly stated that these acts were intended to intimidate and coerce a civilian population, and to influence the policy of the Israeli government and (b) expressly threatened further such terrorist acts if its political demands were not met.

80.     The PIJ's actions were dangerous to human life, by their nature and as evidenced by their consequences.

81.     The PIJ's actions occurred outside the territorial jurisdiction of the United States.

82.     The actions of defendant PIJ therefore constitute "acts of international terrorism" as defined in 18 U.S.C. §§ 2331 and 2333.

83.     As a direct and proximate result of the acts of international terrorism committed by PIJ plaintiffs suffered the damages enumerated herein.

84.     Defendant PIJ is therefore liable for all of plaintiffs' damages in such sums as may hereinafter be determined, to be trebled pursuant to 18 U.S.C. §2333(a).

## THIRD COUNT
## ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS
## <u>WRONGFUL DEATH</u>

85.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

86.     Defendants, personally and/or through their agents and/or employees and/or co-conspirators, willfully and deliberately authorized, organized, planned, aided, abetted, induced, conspired to commit, provided material support for and executed the Terrorist Attack.

87.     Defendants' behavior constituted a breach of legal duties to desist from committing, or aiding, abetting, authorizing, encouraging or conspiring to commit acts of extrajudicial killing, and to refrain from intentionally, wantonly, and/or negligently authorizing or causing the infliction of death, physical injuries and harm to persons such as the plaintiffs herein and the decedent.

88.     Defendants' actions were willful, malicious, intentional, wrongful, unlawful, negligent and/or reckless and were the proximate cause of the Terrorist Attack.

89.     At the time of her death, decedent Noam Leibovitch was 7 years of age, enjoying good health, was industrious and in possession of all her faculties.

90.     The murder of Noam Leibovitch caused decedent, her estate and plaintiffs Shlomo Leibovitch, Galit Leibovitch, Shira Leibovitch, Moshe Leibovitch, Nerya Leibovitch, Hila Leibovitch, Shmuel Eliad and Miriam Eliad severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

91.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

92.     Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## FOURTH COUNT
## ON BEHALF OF THE ESTATE OF NOAM LEIBOVITCH
## AGAINST ALL DEFENDANTS
## SURVIVAL DAMAGES

93.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

94.     The murder of Noam Leibovitch caused by defendants' actions described herein caused Noam Leibovitch and her estate severe injury, including pain and suffering, pecuniary loss and loss of income. From the time of the shooting until her death, decedent Noam Leibovitch suffered great conscious pain, shock and physical and mental anguish.

95.     Defendants are therefore jointly and severally liable to the Estate of Noam Leibovitch for the full amount of decedent's damages, in such sums as may hereinafter be determined.

96.     Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## FIFTH COUNT
## ON BEHALF OF PLAINTIFF SHIRA LEIBOVITCH
## AGAINST ALL DEFENDANTS
## BATTERY

97.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

98.    The Terrorist Attack caused plaintiff Shira Leibovitch severe physical and psychological injuries, extreme pain and suffering, and severe financial loss, including deprivation of future income.

99.    The Terrorist Attack constituted a battery on the person of plaintiff Shira Leibovitch.

100.    As a result of the severe injuries inflicted on her in the Terrorist Attack, plaintiff Shira Leibovitch required hospitalization and medical treatment.

101.    Plaintiff Shira Leibovitch continues to require treatment for and to suffer from the permanent injuries caused by the Terrorist Attack.

102.    Defendants' actions were willful, malicious, intentional, reckless, unlawful and were the proximate cause of the Terrorist Attack and the battery on the person of plaintiff Shira Leibovitch and the injuries plaintiff suffered thereby.

103.    Defendants are therefore jointly and severally liable for the full amount of Shira Leibovitch's damages, in such sums as may hereinafter be determined.

104.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public warranting an award of punitive damages.

## SIXTH COUNT
## ON BEHALF OF PLAINTIFFS SHLOMO LEIBOVITCH,
## GALIT LEIBOVITCH, SHIRA LEIBOVITCH, MOSHE LEIBOVITCH,
## HILA LEIBOVITCH, SHMUEL ELIAD AND MIRIAM ELIAD
## AGAINST ALL DEFENDANTS
## ASSAULT

105.   The preceding paragraphs are incorporated by reference as though fully set forth herein.

106.   The Terrorist Attack caused plaintiffs Shlomo Leibovitch, Galit Leibovitch, Shira Leibovitch, Moshe Leibovitch, Hila Leibovitch, Shmuel Eliad and Miriam Eliad fear and apprehension of harm and death, and actual physical harm, and constituted an assault on the persons of plaintiffs Shlomo Leibovitch, Galit Leibovitch, Shira Leibovitch, Moshe Leibovitch, Hila Leibovitch, Shmuel Eliad and Miriam Eliad.

107.   The Terrorist Attack and assault on their persons, which were direct and proximate results of defendants' actions, caused plaintiffs Shlomo Leibovitch, Galit Leibovitch, Shira Leibovitch, Moshe Leibovitch, Hila Leibovitch, Shmuel Eliad extreme mental anguish and actual physical injury and pain and suffering.

108.   Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

109.   Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public warranting an award of punitive damages.

## SEVENTH COUNT
## ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

110.   The preceding paragraphs are incorporated by reference as though fully set forth herein.

111. Defendants' conduct was willful, outrageous and dangerous to human life, and violates applicable criminal law, all international standards of civilized human conduct and common decency.

112. Defendants intended to, and did in fact, terrorize the plaintiffs, and cause them egregious emotional distress.

113. As a result and by reason of the death of Noam Leibovitch, which was caused by the actions of defendants described herein and personally witnessed by plaintiffs Shlomo Leibovitch, Galit Leibovitch, Shira Leibovitch, Moshe Leibovitch, Hila Leibovitch, Shmuel Eliad and Miriam Eliad in all its horror, plaintiffs Shlomo Leibovitch, Galit Leibovitch, Shira Leibovitch, Moshe Leibovitch, Nerya Leibovitch, Hila Leibovitch, Shmuel Eliad and Miriam Eliad have been deprived of the services, society, consortium and solatium of Noam Leibovitch, and have suffered and will continue to suffer terror, severe mental anguish, bereavement and grief, and injury to their feelings.

114. As a result and by reason of the shooting and injuries caused to Shira Leibovitch by the actions of defendants described herein, which shooting was personally witnessed by plaintiffs Shlomo Leibovitch, Galit Leibovitch, Moshe Leibovitch, Hila Leibovitch, Shmuel Eliad and Miriam Eliad in all its horror, plaintiffs Shlomo Leibovitch, Galit Leibovitch, Moshe Leibovitch, Nerya Leibovitch, Hila Leibovitch, Shmuel Eliad and Miriam Eliad have been deprived of the services, society, company and consortium of Shira Leibovitch, and have suffered and will continue to suffer terror, severe mental anguish, grief, and injury to their feelings.

115.    As a result and by reason of the injuries caused her by the actions of defendants described herein, plaintiff Shira Leibovitch was deprived of the services, society, company, guidance and consortium of her parents and siblings, and has suffered and will continue to suffer terror, severe mental anguish, grief, and injury to her feelings.

116.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

117.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

### EIGHTH COUNT
### ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

118.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

119.    Defendants' conduct was willful, outrageous and/or grossly negligent, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

120.    Defendants' conduct terrorized the plaintiffs and caused them egregious emotional distress.

121.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

122.    Defendants' conduct was outrageous in the extreme, wanton, willful and malicious, and constitutes a threat to the public at large warranting an award of punitive damages.

## NINTH COUNT
## ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS
### CIVIL CONSPIRACY

123.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

124.    The Syrian defendants and the Iranian defendants knowingly and willingly conspired, agreed and acted in concert with each other and with the PIJ in a common plan and design to facilitate and cause acts of international terrorism, extrajudicial killing and personal injury including the Terrorist Attack which harmed plaintiffs.

125.    As a result of the Terrorist Attack caused, resulting from and facilitated by the conspiracy between the Syrian defendants and the Iranian defendants and the PIJ, plaintiffs suffered the damages enumerated herein.

126.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

## TENTH COUNT
## ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS
### AIDING AND ABETTING

127.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

128.    The Syrian defendants and the Iranian defendants provided the PIJ with material support and resources within the meaning of 28 U.S.C. §1605A, and other substantial aid and assistance, in order to aid, abet, facilitate and cause the commission of acts of international terrorism, extrajudicial killing and personal injury including the Terrorist Attack which harmed the plaintiffs.

129.     As a result of the Terrorist Attack caused, resulting from and facilitated by the Syrian defendants' and the Iranian defendants' provision of material support and resources and other acts of aiding and abetting, plaintiffs suffered the damages enumerated herein.

130.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

**ELEVENTH COUNT**
**ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS**
**VICARIOUS LIABILITY/RESPONDEAT SUPERIOR**

131.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

132.     At all relevant times, defendant Hueiji was an agent, officer and employee of defendants Syria, SMD and SAFID acting within the scope of his agency, office and employment. Defendant Hueiji engaged in the actions described herein within the scope of his agency, office and employment and in furtherance of the interests of defendants Syria, SMD and SAFID.

133.     At all relevant times, defendants Tlass, Khalil, Shawkat and Douba were agents, officers and employees of defendants Syria, SMD and SMI acting within the scope of their agency, office and employment. Defendants Tlass, Khalil, Shawkat and Douba engaged in the actions described herein within the scope of their agency, office and employment and in furtherance of the interests of defendants Syria, SMD and SMI.

134.     At all relevant times, defendants Syrian Does 1-10 were agents, officers and employees of defendant Syria acting within the scope of their agency, office and employment. Defendants Syrian Does 1-10 engaged in the actions described herein

within the scope of their agency, office and employment and in furtherance of the interests of defendant Syria.

135. Defendants Syria, SMD, SMI and SAFID authorized, ratified and/or condoned the actions described herein of defendants Tlass, Khalil, Shawkat, Douba, Hueiji and Syrian Does 1-10.

136. Therefore, defendants Syria, SMD, SMI and SAFID are vicariously liable for the acts of defendants Tlass, Khalil, Shawkat, Douba, Hueiji and Syrian Does 1-10.

137. At all relevant times, defendants SMD, SMI and SAFID were agents and/or offices of defendant Syria acting within the scope of their agency and/or office. Defendants SMD, SMI and SAFID engaged in the acts described herein within the scope of their agency and/or office and to further the interest of defendant Syria.

138. Defendant Syria authorized, ratified and/or condoned the conduct of defendants SMD, SMI and SAFID.

139. Therefore, defendant Syria is vicariously liable for the acts of defendants SMD, SMI and SAFID.

140. At all relevant times, defendants Khamenei, Yunesi and Iranian Does 1-10 were agents, officers and employees of defendant Iran acting within the scope of their agency, office and employment. Defendants Khamenei, Yunesi and Iranian Does 1-10 engaged in the actions described herein within the scope of their agency, office and employment and in furtherance of the interests of defendant Iran.

141. Defendant Iran authorized, ratified and/or condoned the actions described herein of defendants Khamenei, Yunesi and Iranian Does 1-10.

142.    Therefore, defendant Iran is vicariously liable for the acts of defendants Khamenei, Yunesi and Iranian Does 1-10.

143.    At all relevant times, defendant MOIS was an agent and/or office of defendant Iran acting within the scope of its agency and/or office. Defendant MOIS engaged in the acts described herein within the scope of its agency and/or office and to further the interests of defendant Iran.

144.    Defendant Iran authorized, ratified and/or condoned the conduct of defendant MOIS.

145.    Therefore, defendant Iran is vicariously liable for the acts of defendant MOIS.

146.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

**WHEREFORE**, plaintiffs demand judgment as follows:

A.    Judgment against the Syrian defendants and the Iranian defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, for Count I and for each of Counts III-XI;

B.    Judgment against the Syrian defendants and the Iranian defendants, jointly and severally, for punitive damages in an amount to be determined at trial, for Count I and for each of Counts III-XI;

C.    Judgment against the PIJ for compensatory damages in an amount to be determined at trial for each of Counts II-XI, with the damages for Count II trebled pursuant to 18 U.S.C. §2333;

D.    Plaintiffs' costs and expenses;

E.      Plaintiffs' attorneys' fees;

F.      Such further relief as the Court finds just and equitable.

Dated: April 3, 2008          SHLOMO LEIBOVITCH, , GALIT LEIBOVITCH,
SHIRA LEIBOVITCH, MOSHE LEIBOVITCH,
NERYA LEIBOVITCH, HILA LEIBOVITCH
SHMUEL ELIAD and MIRIAM ELIAD


By: _s/ Robert D. Cheifetz_____
    One of plaintiffs' attorneys

Robert D. Cheifetz
Daniel A. Shmikler
Sperling & Slater, P.C.
55 West Monroe Street, Suite 3200
Chicago, IL 60603
(312) 641-3200
(312) 641-6492 (fax)
Local counsel

David J. Strachman
McIntyre, Tate & Lynch LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlhlaw.com