**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**SHLOMO LEIBOVITCH, et al.,**
      **Plaintiffs**

    v.                    No. 08-cv-01939

**THE SYRIAN ARAB REPUBLIC, et al.,**
      **Defendants**

**PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT
AGAINST THE ISLAMIC REPUBLIC OF IRAN AND MINISTRY
OF INFORMATION AND SECURITY**

Pursuant to this Court's directive of December 6, 2012 (dkt. #94), Plaintiffs Shlomo Leibovitch, Galit Leibovitch, Moshe Leibovitch, Nerya Leibovitch, Hila Leibovitch, Shmuel Eliad, and Miriam Eliad, move for entry of judgment against the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS") consistent with Judge William T. Hart's ruling of February 1, 2011 (dkt. #73) and as modified by the Court of Appeals' decision of October 17, 2012. Dkt. #88.

**I. TRAVEL**

This is a civil action against Iran and MOIS under the "terrorism exception" to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A. This action arises from a 2003

terrorist shooting attack in Israel carried out by the Palestine Islamic Jihad terrorist group. A seven year old girl, Noam, was murdered, and her sister Shira, then three years old, was severely injured in the shooting attack.

The action was brought by Shira, her parents, siblings and grandparents (most of whom were present at the attack), and the estate of Noam. Shira is an American citizen while the remaining plaintiffs are not U.S. citizens.

On February 1, 2011, Judge Hart rendered a decision directing that judgment enter in favor of Shira Leibovitch only and against Iran and MOIS. That opinion also dismissed the claims of the other (i.e. the non-American) plaintiffs for lack of subject-matter jurisdiction. Dkt. #73.

The dismissed non-American plaintiffs then filed a motion for reconsideration arguing that the district court did have subject-matter jurisdiction over their Israeli tort claims under 28 U.S.C. § 1605A and requesting a judgment awarding them damages. Judge Hart denied that motion on March 8, 2011. Dkt. #77.

The dismissed plaintiffs appealed the February 1, 2011 opinion and the March 8, 2011 order. The Court of Appeals issued a decision on September 25, 2012 reversing Judge Hart's dismissal of the remaining family members' claims and stating,

> Since [Shira] was an American national and a victim of the terrorist act, Congress appears to have intended her immediate family members to "have the benefit" of the FSIA's jurisdictional provisions even if they cannot make use of the federal cause of action …
>
> Congress has established a private right of action principally for American *claimants* while waiving sovereign immunity in a broader set of cases also involving American *victims*...

> ...we are obliged to focus on statutory text and congressional intent and we do not find evidence to support the conclusion that Congress intended to foreclose claims by noncitizen family members when it enacted §1605A(c) . . .
>
> We [] conclude that the plaintiffs have established subject-matter jurisdiction over their claims for emotional distress arising out of the injuries inflicted upon Shira, a U.S. citizen victim of the terrorist attack…
>
> Though she is not a victim of extrajudicial killing, [Shira] is a victim of the *act* that killed her sister because she was severely injured in the same assault. Therefore, jurisdiction exists for her foreign national family members to bring claims derived from [Shira's] injury…
>
> Therefore, we vacate the district court's hypothetical determination and remand for reconsideration of the emotional distress claims.

*Leibovitch v. Islamic Republic of Iran,* 697 F.3d 561, 570-573 (7th Cir. 2012) (emphasis in original).

## II. **DISTRICT COUT PROCEEDINGS**

On June 17, 2003, the Leibovitch family was traveling along the Trans-Israel Highway, just west of the town of Kalkilya, when terrorists from the Palestine Islamic Jihad terrorist organization opened fire with Kalashnikov machine guns and pistols on their family's Mazda mini-van. Seven year old Noam was murdered, and her sister, Shira, then three years old, was severely injured in the terrorist attack. All other family members survived the attack.

This action was brought by Shira, her parents (Shlomo Leibovitch and Galit Leibovitch) her siblings (Moshe, Nerya and Hila) and her grandparents (Shmuel Eliad and Miriam Eliad) and the estate of Noam. Shira is a U.S. citizen from birth. The other plaintiffs are not U.S. citizens.

3

Plaintiffs sought damages against Iran and MOIS for their provision of material support and resources to the terrorist group (Palestine Islamic Jihad) that carried out the terrorist attack.[1]

Iran and MOIS were served with process under the FSIA by the U.S. State Department via diplomatic means. Dkt. #21, #26. They failed to respond to the complaint and were defaulted. Dkt. # 32 Plaintiffs then moved for default judgment.

A default judgment against a foreign state may enter only after a party "establishes his claim or right to relief by evidence that is satisfactory to the Court." 28 U.S.C. §1608(e). Accordingly, plaintiffs submitted extensive evidence to support their request for default judgment.

It is common practice in civil terrorism cases against defaulting foreign sovereigns to submit expert and victim testimony by affidavit.[2] Therefore, with Judge Hart's permission, all of the testimony in this matter was submitted by affidavit.

In respect to the liability of Iran and MOIS for the terrorist attack, plaintiffs offered the expert testimony of Dr. Patrick Clawson of the Washington Institute for Near East Policy (dkt. #43) and Brigadier General Yosef Kuperwasser of the Israel Defense Forces. Dkt. #59.

---

[1] Plaintiffs' complaint also named as defendants The Syrian Arab Republic, The Syrian Ministry of Defense, Mustafa Tlass, Syrian Military Intelligence, Hassan Khalil, Assef Shawkat, Ali Douba, The Syrian Air Force Intelligence Directorate, and Ibrahim Hueiji. Pursuant to Fed.R.Civ.P. 41(a)(1)(A)(i), plaintiffs filed a voluntary notice of dismissal, without prejudice, as to these defendants. Dkt. # 30. The Court on its own initiative dismissed Ayatollah Ali Hoseini Khamenei, Ali Yunesi, Iranian Does 1-10 and Palestine Islamic Jihad, without prejudice, for failure to serve pursuant to Fed.R.Civ.P 4(m). Dkt. #32.

[2] *See Wachsman v. Islamic Republic of Iran,* 603 F.Supp.2d 148, 154 (D.D.C. 2009), *Campuzano v. Islamic Republic of Iran*, 281 F. Supp.2d 258, 268 (D.D.C. 2003), *Acosta v. Islamic Republic of Iran*, 574 F.Supp.2d 15 (D.D.C. 2008), *Weinstein v. Islamic Republic of Iran,* 184 F.Supp.2d 13, 16-19 (D.D.C. 2002); *Hutira v. Islamic Republic of Iran*, 211 F.Supp.2d 115, 124 (D.D.C. 2002); *Elahi v. Islamic Republic of Iran*, 124 F. Supp.2d 97, 100 (D.D.C. 2000).

Additionally, plaintiffs provided "extensive documentary evidence such as United States government reports, publications, and other information, concerning the PIJ, Iran, and MOIS." *Leibovitch v. Syrian Arab Republic,* 2011 WL 444762, 3 (N.D. Ill. 2011) (*see* dkt #63, exhibits A-V, dkt. #66). Judge Hart accepted this evidence and "adopt[] the testimony of Dr. Clawson and Brig. Gen. Kuperwasser" making extensive findings of fact with respect to the liability of Iran and MOIS for the attack. *Id.* at 3-6 and 9.

Similarly, plaintiffs submitted extensive damages testimony in detailed affidavits from the victims-plaintiffs (dkt. ##47, 48, 49, 50, 51, 52). Plaintiffs' expert witnesses submitted detailed reports. Dkt. ##44, 45.

Judge Hart's request, plaintiffs submitted detailed proposed findings of fact and conclusions of law with respect to both liability and damages. Dkt. #64.

On February 1, 2011, Judge Hart entered an Opinion directing that final judgment be entered in favor of Shira and against Iran and MOIS. Dkt. #73. That Opinion also directed that the claims of the other (i.e. the non-American) family members be dismissed for lack of pendent subject-matter jurisdiction.

As Judge Hart's findings of fact and legal rulings with respect to the liability of Iran and MOIS for the terrorist attack apply to the claims of all plaintiffs (i.e. both Shira and the remaining non-Americans), this issue is not a matter now before this Court on remand. Liability for the attack has been established with respect to all plaintiffs and thus the only issues remaining for this Court to address are whether under Israeli law the remaining plaintiffs have established their claims and the appropriate quantum of damages.

### III. PLAINTIFFS' REQUEST FOR JUDGMENT

#### A. Jurisdiction over the non-American Plaintiffs' claims

On appeal the Court of Appeals ruled that Shira's family members, although not American citizens, can take advantage of the jurisdictional provisions of FSIA §1605A:

> First, the plain text and plain meaning of §1605A(a)(2)(A)(ii) extends jurisdiction to cases where *either* "the claimant or the victim was, at the time of the [terrorist] act" a United States citizen. The claimant and victim need not both be American citizens. As a general matter, "[w]e should prefer the plain meaning since that approach respects the words of Congress." *Lamie v. U.S. Tr.,* 540 U.S. 526, 536, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). If Congress intended a jurisdictional scope coterminous with that of § 1605A(c)'s private right of action for United States nationals, there would have been no need to include the word "victim." We would show little deference to Congress's chosen language if we simply read the word "victim" out of the statute entirely. Denying jurisdiction over family members' claims for American victims would require us to ignore the disjunctive structure of § 1605A(a)(2)(A)(ii).
>
> Congress's intention to cover claims by foreign national family members also emerges from the legislative history accompanying the 1996 precursor to this jurisdiction-conferring provision: § 1605(a)(7)(B)(ii). Congress slightly amended language in this provision to waive sovereign immunity if "*neither* the claimant *nor* the victim was a national of the United States ... when the act upon which the claim is based occurred." *Id.* (emphasis added). The accompanying House Report explained that the clarification was made to ensure recovery for foreign national family members: "The intent of the drafters was that a family should have the benefit of these provisions if either the victim of the act or the survivor who brings the claim is an American national. Due to a drafting error, the current law can be read to require that both the victim and the claimant must be American nationals before the claimant can use these provisions.... The correction will benefit several of the Pan Am 103 families who could potentially lose their claims if this correction is not passed." H.R. Rep. 105–48 at 2 (1996). Since [Shira] was an American national and a victim of the terrorist act, Congress appears to have intended her immediate family members to "have the benefit" of the FSIA's jurisdictional provisions even if they cannot make use of the federal cause of action.
>
> Next, the overall jurisdiction-conferring structure of the FSIA supports the interpretation that the pass-through approach survives Congress's creation of a private right of action. The typical rule for suits under the FSIA is that the statute "operates as a 'pass-through' to state law principles." *Pescatore,* 97 F.3d at 12.

6

> **So, by bringing a claim against Iran under Israeli law, [Shira's] family members would be making traditional use of the FSIA.**

*Leibovitch v. Islamic Republic of Iran*, 697 F.3d 561, 570 -571 (7th Cir. 2012) (footnote omitted) (emphasis added).

The Court of Appeals further explicitly found that under the FSIA, since Shira was a "victim" of the terrorist attack that killed her sister Noam, her non-American family members can seek damages for their Israeli law claims,

> We agree and conclude that the plaintiffs have established subject-matter jurisdiction over their claims for emotional distress arising out of the injuries inflicted upon [Shira] a U.S. citizen victim of the terrorist attack. . . .
>
> Though she is not a victim of extrajudicial killing, [Shira] is a victim of the *act* that killed her sister because she was severely injured in the same assault. Therefore, jurisdiction exists for her foreign national family members to bring claims derived from [Shira's] injury. *See also Estate of Doe,* 808 F.Supp.2d at 13; *Peterson,* 515 F.Supp.2d at 66 (calculating damages for claims brought by family members of servicemen who were injured but not killed in the 1983 attack on the Marine Corps barracks in Beirut).

*Id*. at 572.

### B. Israeli causes of action

The Israeli law claims pled by plaintiffs in their Complaint that are applicable to this remand are battery (Count 5), assault (Count 6), intentional infliction of emotional distress (Count 7), negligent infliction of emotional distress (Count 8), conspiracy (Count 9), aiding and abetting (Count 10), and vicarious liability/respondeat superior (Count 11). Dkt. # 1. Judge Hart previously found that the elements of the American counterparts to these Israel causes of action have been met:

> 5. The evidence clearly shows and the court finds and concludes that Iran and the MOIS provided "material support or resources" to the PIJ, within the meaning of 28 U.S.C. § 1605A, for the specific purpose of

7

> carrying out acts of extrajudicial killing such as the shooting in which Noam Leibovitch was killed and her family was harmed. The court also concludes that Iran was designated as a state sponsor of terrorism by the United States both at the time that Iran provided the PIJ with material support and resources and at the time of the shooting. Therefore, this court has jurisdiction over this action and defendants are not immune from this action. *Belkin v. Islamic Republic of Iran*, 667 F.Supp.2d 8, 19 (D.D.C. 2009).
>
> 6. The court concludes that Iran and MOIS are vicariously liable as aiders and abettors and coconspirators for the June 17, 2003 shooting attack committed by the PIJ. As detailed above, for at least several years preceding the shooting, Iran, MOIS, and the PIJ acted in concert and pursuant to a joint policy to facilitate and carry out such attacks, in order to achieve shared goals and purposes, and Iran and MOIS provided funds and other material support that aided and abetted such attacks. Iran and the PIJ have openly proclaimed the existence of their alliance and its goals. Moreover, the very provision of funds by Iran and MOIS to the PIJ and its operatives with the intention of enabling the commission of terrorist attacks clearly bespeaks a conspiracy to commit such attacks, and aided and abetted such attacks.

*Leibovitch v. Syrian Arab Republic*, 2011 WL 444762, 9 (N.D.Ill. 2011).

Plaintiffs previously presented to the Court the expert opinion of Israeli law expert Avraham Colthof. Dkt. #58. Mr. Colthof described in detail the applicable Israeli rules of tort liability and related case law. He also indicated how the facts of this case (which now have been established by Judge Hart) satisfy the elements of the Israeli law claims pled by plaintiffs in counts 5 – 11 of their complaint. He further concluded that,

> 18. Israeli case law recognizes and provides for both monetary and non-monetary damages in civil actions in tort.
>
> 19. Non-monetary remedies recognized by the Israeli case law in tort actions include physical pain and suffering, the gamut of clinically recognized forms of psychological harm, disabilities and pathologies (such as depression and post-traumatic stress disorder) as well as non-pathological (i.e. "regular") mental/emotional pain and anguish, which is usually referred to in Israel as "emotional distress." *See e.g* Civil Appeal 398/99 *General Histradrut Health Fund et al. v. Leah Dayan et al.*, Israeli Supreme Court Decisions Vol. 55(1), 795 (1999).

### F. Conclusions

20.     In light of the above, in my professional opinion there is absolutely no question whatsoever that Israeli law provides both causes of action and remedies for the injuries suffered by plaintiffs Shlomo Leibovitch, Galit Leibovitch, Moshe Leibovitch, Nerya Leibovitch, Hila Leibovitch, Shmuel Eliad and Miriam Eliad as the result of the shooting of and resulting injuries suffered by Shira Leibovitch.

21.     It is clear that the shooting complained of meets the definition of and constituted the tort of Assault under § 23 of the TO. Assuming, as alleged by plaintiffs, that the Palestine Islamic Jihad (PIJ) carried out the shooting, then PIJis directly liable under the TO for the damages suffered by plaintiffs as a result of that assault.

22.     It is also clear that the shooting meets the definition of and constituted the tort of Negligence as defined in §§ 35-36 of the TO. The PIJ is therefore directly liable under §§ 35-36 of the TO for the damages suffered by plaintiffs.

23.     Moreover, assuming (as plaintiffs allege) that Iran and the other Iranian defendants actively solicited and funded the PIJ's terrorist attacks, then the conduct of Iran and the other Iranian defendants certainly meets the definition of and constituted the tort of Negligence as defined in §§ 35-36 of the TO, and Iran and the other Iranian defendants are therefore directly liable under §§ 35-36 of the TO for the damages suffered by plaintiffs.

24.     Additionally, assuming that Iran and the other Iranian defendants authorized, participated in, assisted, advised, solicited, ordered and/or ratified the commission of terrorist attacks by the PIJ, as plaintiffs allege in substantively similar terms in their Complaint, then Iran and the other defendants are also vicariously liable under §§ 12-14 of the TO for the damages suffered by plaintiffs as a result of the shooting carried out by the PIJ.

25.     Thus, in sum, under Israeli law, Iran and the Iranian defendants are both directly and vicariously liable for the tort of Negligence, and vicariously liable for the tort of Assault, and are therefore liable for plaintiffs' damages resulting therefrom.

26.     As noted, Israeli law recognizes and Israeli courts award damages in tort actions for both monetary and non-monetary harm, including both psychological disabilities and "emotional distress." Thus, to the extent that Shlomo Leibovitch, Galit Leibovitch, Moshe Leibovitch, Nerya Leibovitch, Hila Leibovitch, Shmuel Eliad and Miriam Eliad suffered

> monetary harm, psychological trauma (such as depression, post-traumatic stress disorder or the like) and/or emotional distress as a result of as the result of (sic) the shooting of and resulting injuries suffered by Shira Leibovitch, Israeli law provides for and would require the instant defendants to financially compensate those plaintiffs therefor.

Dkt. #58, pp. 4-6. Accordingly, the legal basis under applicable Israeli statutes and case law for the remaining non-American plaintiffs' claims against Iran and MOIS, in light of the ruling of the Court of Appeals, has been clearly established.[3]

### C. Plaintiffs' compensatory damages

In light of the Court of Appeals' ruling, plaintiffs respectfully submit that in reviewing their claims for damages on remand this Court need only consider the evidence previously submitted in order to enter judgment. On remand, this Court can easily access the plaintiffs' extensive damages evidence identified below.

Plaintiffs' claims for damages are supported by the expert opinion and reports of Dr. Rael Straus (dkt. #45) (who interviewed and examined the victims and reviewed their medical and mental health records) and their own detailed affidavits relating to the attack and their injuries. The expert and victims' testimony has been collated in plaintiffs' extensive and detailed Final Proposed Findings of Fact and Conclusions of Law ("Final Proposed Findings"). Dkt. #64, pp. 34-56 and 64-90.

According, plaintiffs respectfully direct the Court to the following pleadings and evidence in the record and incorporate same in this motion:

---

[3] Plaintiffs originally anticipated that on remand from the Court of Appeals that they would file a supplemental expert opinion on Israeli law and notified this Court that the Leibovitch family's Israeli counsel had commissioned a new export report. As no such report has been provided, in this motion the Leibovitchs rely on Avraham Colthof's original expert opinion.

**Shlomo Leibovitch**

    Affidavit, dkt. #47

    Dr. Strous Report, dkt # 45, Exhibit B

    Final Proposed Findings, dkt. # 64, pp. 34-47

**Gait Leibovitch**

    Affidavit, dkt. #48

    Dr. Strous Report, dkt # 45, Exhibit C

    Final Proposed Findings, dkt. # 64, pp. 47-56

**Moshe Leibovitch**

    Affidavit, dkt. #49

    Dr. Strous Report, dkt # 45, Exhibit G

    Final Proposed Findings, dkt. # 64, pp. 64-68

**Nerya Leibovitch**

    Final Proposed Findings, dkt. # 64, p. 69

**Hila Leibovitch**

    Affidavit, dkt. #50

    Dr. Strous Report, dkt # 45, Exhibit H

    Final Proposed Findings, dkt. # 64, pp.  69-76

**Shmuel Eliad**

    Affidavit, dkt. #51

    Dr. Strous Report, dkt # 45, Exhibit D

Final Proposed Findings, dkt. # 64, pp. 76- 81

**Miriam Eliad**

Affidavit, dkt. #52,

Dr. Strous Report, dkt # 45, Exhibit E

Final Proposed Findings, dkt. # 64, pp. 81-88

**Estate of Noam Leibovitch**

Affidavit of Galit Leibovitch, dkt. #48 ¶¶ 25-26

Final Proposed Findings, dkt. # 64, pp. 88-89

**D. Punitive damages**

In addition to compensatory damages, as is customary in terrorism cases under the FSIA, the remaining plaintiffs seek an award of punitive damages. In their Final Proposed Findings (dkt. #64 p. 89), plaintiffs sought punitive damages of $300 million which is three times Iran's annual budget for the export of terrorism and consistent with the prior rulings of many other FSIA civil terrorism cases. e. g. *Acosta v. The Islamic Republic of Iran*, 574 F.Supp.2d 15, 31 (D.D.C. 2008) (see also cases cited in plaintiff's Final Proposed Findings, dkt. # 64. p. 89). As Dr. Clawson testified that Iran's annual support of Palestine Islamic Jihad and other terrorist organizations is $100- $400 million (dkt. #43, p. 7), plaintiffs believe this is an appropriate amount to award against both Iran and MOIS collectively.

Judge Hart saw fit to depart from this standard,

> Under current law, plaintiff may obtain punitive damages against both Iran itself and MOIS. 28 U.S.C. § 1605A(c); *Oreissi v. Islamic Republic of Iran,* 573 F.3d 835, 840 (D.C.Cir.2009); *Beer v. Islamic Republic of Iran,* 2010 WL 5105174 *1 (D.D.C. Dec.9, 2010). In civil terrorism cases tried under FSIA, judges have awarded punitive damages to punish defendants and to deter future acts of terrorism. Courts have imposed punitive damage of

>three times Iran's annual budget for the export of terrorism. *See Beer,* 2010 WL 5105174 at *16; *Acosta,* 574 F.Supp.2d at 31; *Bodoff,* 424 F.Supp.2d at 89. Recent Supreme Court precedent, however, has reemphasized the importance of considering the ratio between compensatory and punitive damages. *See Exxon Shipping Co. v. Baker,* 554 U.S. 471, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008); *Beer,* 2010 WL 5105174 at *17; *Rimkus v. Islamic Republic of Iran,* 750 F.Supp.2d 163, 2010 WL 4628317 *18–19 (D.D.C. Nov.16, 2010). Still, there is no strict ratio and three guideposts are to be considered in evaluating the constitutionality of a punitive damages award: "the reprehensibility of the action in question, the ratio between the compensatory and punitive damages, and the parallel remedies available." *Kunz v. DeFelice,* 538 F.3d 667, 679 (7th Cir.2008); *Bunton v. Cape Cod Vill., LLC,* 2009 WL 2139441 *3 (C.D.Ill. July 6, 2009). Here, the conduct involved reaches the extreme limits of reprehensibility. Nevertheless, this is a case in which substantial compensatory damages are being awarded so that a high ratio is not necessary for there to be a substantial punitive damages award. Also, numerous punitive damages awards have been made against Iran, MOIS, or their underlings for supporting terrorism. *Cf. Rimkus,* 2010 WL 4628317 at *18. Another such award will not significantly add to the deterrent effect of punitive damages. Considering the extreme reprehensibility of defendants' conduct and the wealth of defendants, a punitive damages award that is double the compensatory damages is appropriate.

*Leibovitch v. Syrian Arab Republic*, 2011 WL 444762, 10 (N.D.Ill. 2011).

However, since Judge Hart's original ruling several courts have found that larger punitive damage awards are appropriate notwithstanding the Supreme Court jurisprudence in non-FSIA cases. For instance, the leading jurist on all matters pertaining to civil terrorism cases, Chief Judge Lamberth of the District of Columbia federal court, found the Supreme Court limitation on damages inapplicable in terrorism cases,

>With respect to whether FSIA courts are required to extend punitive damage principles grounded in Due Process to these cases in light of the Supreme Court's extension of those principles to general maritime law, this Court articulated three reasons why they should not. First, it explained that the field of admiralty law is a unique area of law in which the federal courts' special role as purveyors of the law obligated the Supreme Court in *Exxon* to "fashion governing principles without consideration of other legal contexts," *id.* at 23, and that, "mindful of the special context in which *Exxon* was articulated," this Court is "not prepared to affect a sea-change in the law governing the assessment of punitive damages under federal statutes or

federal common law generally." *Id.* at 23. Second, the *Beer* Court explained that Congress had been aware of both emerging Supreme Court doctrine on punitive damages and the established method for their calculation in FSIA cases prior to its enactment of the NDAA, and that its choice to provide for punitive damages in that Act using the same language that had previously controlled the question constituted an implicit approval of the traditional framework. *See generally id.* at 23–25. Finally, this Court contrasted the context involved in cases arising under the state-sponsored terrorism exception—which involve heinous and evil acts—with the case in *Exxon*—which involved mere recklessness—and concluded that it is "beyond the pale that the Supreme Court would countenance similar restrictions on the institution of punitive sanctions in response to acts of terrorism that impose a sentence of death or horrific physical and psychological injury on victims, a lifetime of unimaginable grief on loved ones, and immeasurable sorrow on the whole of humanity." *Id.* at 25–26. Based on these rationales, along with its earlier determination that Due Process principles play no role in limiting punitive damages in terrorism-related FSIA suits, this Court held that the established procedure "for the calculation of punitive damage awards in FSIA cases should continue to govern cases arising from the atrocities of state-sponsored terrorism." *Id.* at 26.

The Court now turns to applying the established procedure in this case. The first step in this method is to estimate defendants' annual support for international terrorism. Here, plaintiffs request that the Court take judicial notice of Dr. Clawson's estimates of defendants' annual support—which place the relevant figure at approximately $100 million—to calculate punitive damages. Motion for Default Judgment at 9–10. Using this figure and the typical multiplier of 3, the Court finds no reason to deviate from standard practices concerning punitive damages under the state-sponsored terrorism exception to the FSIA, which are designed to provide optimal sanctions and deter future tragedies. The Court will award $300 million in punitive damages, to be distributed in proportion to each plaintiff's share of the compensatory award.

*Haim v. Islamic Republic of Iran*, 784 F.Supp.2d 1, 14 (D.D.C. 2011), *see also Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, 2013 WL 351546, 31 (D.D.C. 2013) ("I recommend an award of $150 million in punitive damages to each of the victims of the shooting and their families.").

14

In light of this evolving post-*Exxon* decisional law, plaintiffs request that this Court award punitive damages on behalf of the remaining non-American victims as requested in their Final Proposed Findings. Dkt. #64.

## IV. CONSLUSION

Having established their right to relief consistent with the ruling of the Court of Appeals, the remaining non-American plaintiffs respectfully request that this Court enter judgment in their favor against the Islamic Republic of Iran and the Iranian Ministry of Information and Security as requested in their Final Proposed Findings of Fact and Conclusions of Law (dkt. #64, pp. 34-56, 64-90) for compensatory damages as follows:

| | |
|---|---|
| Shlomo Leibovitch | $20,000,000 |
| Gait Leibovitch | $20,000,000 |
| Moshe Leibovitch | $18,000,000 |
| Nerya Leibovitch | $10,000,000 |
| Hila Leibovitch | $18,000,000 |
| Shmuel Eliad | $18,000,000 |
| Miriam Eliad | $18,000,000 |
| Estate of Noam Leibovitch | $30,000,000 |

Plaintiffs further request an award of punitive damages in the amount of $300 million collectively, or in the alternative, an amount equal to double the compensatory damages awarded by this Court on remand.

Plaintiffs, Shlomo Leibovitch, et al,

By: /s/ David J. Strachman
Attorney for the Plaintiffs
David J. Strachman
McIntyre Tate LLP
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)
djs@mtlesq.com

Robert D. Cheifetz
Daniel A. Smikler
Sperling & Slater, P.C.
55 West Monroe Street, Suite 3200
Chicago, IL 60603
(312) 641-3200
(312) 641-6492 (fax)