# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| SHLOMO LEIBOVITCH, *et al.*, | |
| *Plaintiffs*, | Civil Case No. 08 C 1939 |
| v. | Hon. Ruben Castillo |
| ISLAMIC REPUBLIC OF IRAN, THE, *et al.*, | |
| *Defendants*. | |

## NON-PARTY THE BANK OF TOKYO-MITSUBISHI UFJ, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LIMITED INTERVENTION AND TO QUASH THE CITATION AND SUBPOENA

Bruce E. Clark
Bradley P. Smith
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel.: (212) 558-4000
Fax: (212) 558-3588
clarkb@sullcrom.com
smithbr@sullcrom.com

*Of Counsel*

Christopher M. Viapiano
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Tel.: (202) 956-7500
Fax: (202) 956-7056
viapianoc@sullcrom.com

Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 782-0600
Fax: (312) 701-7711
bmiller@mayerbrown.com

*Attorneys for non-party The Bank of Tokyo-Mitsubishi UFJ, Ltd.*

October 22, 2015

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT .......................................................................................................3

I.     BTMU Is Not Subject to Personal Jurisdiction in Illinois Sufficient To Give the
       Citation and Subpoena Extraterritorial Reach. ..................................................3

II.    The Presumption Against Extraterritorial Application Precludes Construing the
       Citation To Have Effect Outside of the United States. .........................................5

III.   Under the Separate Entity Rule, a Citation and Subpoena Served on
       BTMUIL Cannot Reach Other BTMU Branches in Japan or Elsewhere. ...........................7

IV.    Under Principles of Comity, the Citation and Subpoena Should Not Compel
       Compliance in Violation of the Laws of Japan and Other Countries. ................................9

V.     The FSIA Does Not Permit the Restraint of Assets Outside of the United States............11

VI.    Requiring a Global Search for Assets, Documents and Information Would Subject
       BTMU to Unnecessary and Improper Burdens. ................................................12

VII.   Application of Rule 1402 Abroad Would Violate the Dormant Commerce Clause..........12

CONCLUSION....................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alliant Energy Corp.* v. *Bie*,
  330 F.3d 904 (7th Cir. 2003) ...................................................13

*Autotech Techs. LP* v. *Integral Research & Dev. Corp.*,
  499 F.3d 737 (7th Cir. 2007) ...................................................11

*Avery* v. *State Farm Mut. Auto. Ins. Co.*,
  835 N.E.2d 801 (Ill. 2005) .......................................................6

*Bank of Aspen* v. *Fox Cartage, Inc.*,
  141 Ill. App. 3d 369, 490 N.E.2d 145 (Ill. App. Ct. 2d Dist. 1986) .........................7

*Bank of Montreal* v. *Clark*,
  108 Ill. App. 163 (Ill. App. 1903) ............................................8

*Barker* v. *Local 150, IUOE, AFL-CIO*,
  2010 WL 934068 (N.D. Ill. Mar. 11, 2010) ....................................3

*Daimler AG* v. *Bauman*,
  134 S. Ct. 746 (2014) ...................................................3, 4, 5, 8

*In re Estate of Marcos Human Rights Litig.*,
  1997 WL 428544 (N.D. Ill. July 24, 1997) ....................................8

*Ferguson* v. *Ferguson*,
  634 N.E.2d 506 (Ind. App. 1994) ............................................14

*Gates* v. *Syrian Arab Republic*,
  2013 WL 1337214 (N.D. Ill. Mar. 29, 2013) ...................................6

*Gates* v. *Syrian Arab Republic*,
  755 F.3d 568 (7th Cir. 2014) ................................................11

*Gucci Am., Inc.* v. *Bank of China*,
  768 F.3d 122 (2d Cir. 2014) .................................................4

*Healy* v. *Beer Inst.*,
  491 U.S. 324 (1989) ......................................................13, 14

*Hill* v. *Capital One Bank (USA), N.A.*,
  2015 WL 468878 (N.D. Ill. Feb. 3, 2015) ....................................5

*Ill. Crime Investigating Comm'n* v. *Buccieri*,
224 N.E.2d 236 (Ill. 1967) ........................................................................8

*In re Marriage of Kosmond*,
357 Ill. App. 3d 972, 830 N.E.2d 596 (Ill. App. Ct. 1st Dist. 2005) ....................8, 10

*Kiobel* v. *Royal Dutch Petroleum Co.*,
133 S. Ct. 1659 (2013) ..........................................................................6

*Kipp* v. *Ski Enter. Corp. of Wisc.*,
783 F.3d 695 (7th Cir. 2015) ....................................................................4, 5

*Livingston* v. *Naylor*,
920 A.2d 34 (Md. App. 2007) ....................................................................14

*Morrison* v. *Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010) ..............................................................................6

*Motorola Credit Corp.* v. *Standard Chartered Bank*,
21 N.E.3d 223 (N.Y. 2014) ........................................................................7

*Motorola Credit Corp.* v. *Uzan*,
2015 WL 5613077 (S.D.N.Y. Sept. 9, 2015) ..........................................................4

*N. Grain Mktg., LLC* v. *Greving*,
743 F.3d 487 (7th Cir. 2014) ....................................................................5

*Nat'l Foreign Trade Council* v. *Narsios*,
181 F.3d 38 (1st Cir. 1999) ....................................................................14

*NML Capital, Ltd.* v. *Banco Central de la República Argentina*,
652 F.3d 172 (2d Cir. 2011) ....................................................................11

*Our Lady of Bellefonte Hosp.* v. *Ashland GI Servs., LLC*,
2012 WL 787199 (N.D. Ill. Mar. 9, 2012) ........................................................4

*Peterson* v. *Islamic Republic of Iran*,
2008 WL 5046327 (N.D. Cal. Nov. 24, 2008), *aff'd*, 627 F.3d 1117
(9th Cir. 2010) ..............................................................................11, 12

*Pike* v. *Bruce Church, Inc.*,
397 U.S. 137 (1970) ............................................................................15

*Polacke* v. *Super. Ct. In & For Cnty. of Maricopa*,
823 P.2d 84 (Ariz. App. 1991) ..................................................................14

*Ransom* v. *A.B. Dick Co.*,
289 Ill. App. 3d 663, 682 N.E.2d 314 (Ill. App. Ct. 1st Dist. 1997) ......................9

*Rubin* v. *Islamic Republic of Iran,*
    637 F.3d 783 (7th Cir. 2011) ...........................................................................11

*SEC* v. *Homa,*
    514 F.3d 661 (7th Cir. 2008) .............................................................................5

*Selevan* v. *N.Y. Thruway Auth.,*
    584 F.3d 82 (2d Cir. 2009)...............................................................................13

*Tresona Multimedia, LLC* v. *Legg,*
    2015 WL 4911093 (N.D. Ill. Aug. 17, 2015) ......................................................12

*United Haulers Ass'n, Inc.* v. *Oneida-Herkimer Solid Waste Mgmt. Auth.,*
    550 U.S. 330 (2007)........................................................................................15

*United States* v. *First Nat'l Bank of Chicago,*
    699 F.2d 341 (7th Cir. 1983) .............................................................................9

*W. Union Telegraph Co.* v. *Pa.,*
    368 U.S. 71 (1961)..........................................................................................10

*Walden* v. *Fiore,*
    134 S. Ct. 1115 (2014)..................................................................................4, 5

*Zschernig* v. *Miller,*
    389 U.S. 429 (1968)........................................................................................15

**Constitution, Statutes and Rules**

U.S. Const. art. I, § 8, cl. 3................................................................................12

U.S. Const. art. I, § 8, cls. 1, 3, 4, 10, 11 ............................................................15

U.S. Const. art. I, § 9, cl. 8................................................................................15

U.S. Const. art. II, § 2, cls. 1, 2.........................................................................15

U.S. Const. art. II, § 3 ......................................................................................15

U.S. Const. art. III, § 3, cl. 2 .............................................................................15

U.S. Const. amend. XIV, § 1, cl. 3 .....................................................................10

National Defense Authorization Act of 2008, Pub. L. No. 110-181, § 1083 (2008).....................11

Terrorism Risk Insurance Act, Pub. L. No. 107-297, § 201(a), 116 Stat. 2322,
    2337 (2002)...................................................................................................12

28 U.S.C. § 1602 *et seq.*...................................................................................11

28 U.S.C. § 1610(g) ..................................................................................................11

28 U.S.C. § 1611(b)(1) ...........................................................................................11

Fed. R. Civ. P. 24 ......................................................................................................3

735 ILCS 5/2-1402 ............................................................................................ *passim*

735 ILCS 5/2-1402(b) ................................................................................................6

735 ILCS 5/2-1402(b-5) ............................................................................................6

735 ILCS 5/2-1402(e) ................................................................................................6

735 ILCS 5/12-712 ..................................................................................................10

**Other Authorities**

Code of Civil Enforcement of Japan, Art. 24 (Law No. 4, 1979)..................................14

*Viswanathan* v. *Wajid*, A.I.R. 1963 S.C. 1 (India) ........................................................14

Non-party The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") respectfully submits this memorandum in support of its motion for limited intervention and to quash the citation to discover assets and subpoena under Rule 45 served on the Chicago branch of BTMU ("BTMUIL") on August 24, 2015 ("Citation" and "Subpoena") insofar as they purport to apply to assets, documents and information held by BTMU outside of Illinois.

## PRELIMINARY STATEMENT

This motion arises from a post-judgment Citation and Subpoena issued by plaintiffs and served on the Chicago branch of BTMU, a Japanese bank. Plaintiffs claim that the Citation and Subpoena together require BTMU to search for and restrain assets of the judgment debtors and to search for and produce documents about such assets held in any BTMU branch anywhere in the world. The consequence of construing and enforcing the Citation and Subpoena in this way would be to extend them to assets and documents that have no connection with the United States, to subject BTMU to conflicting legal obligations, and to interfere with the banking laws of Japan, a sovereign ally of the United States, and potentially of many other countries. Such an outcome would, among other things: (i) improperly subject BTMU to personal jurisdiction in a U.S. court; (ii) violate the presumption against construing Illinois's judgment-enforcement statute to have extraterritorial reach; (iii) conflict with the "separate entity rule," which in the judgment-enforcement context requires each branch of a bank to be treated as a separate entity; (iv) fail to accord appropriate deference to the laws of Japan; (v) conflict with the strict limits that apply under the Foreign Sovereign Immunities Act ("FSIA") to efforts to collect on a judgment against a foreign sovereign; (vi) subject BTMU to undue burden; and (vii) violate the Constitution's Dormant Commerce Clause. Accordingly, the Court should deny the Citation and Subpoena extraterritorial reach.

**BACKGROUND**

Plaintiffs obtained default judgments totaling $67 million against the Islamic Republic of Iran and the Iranian Ministry of Information and Security (the "Judgment Debtors") in this Court on February 1, 2011 and March 31, 2014. (Dkt. Nos. 73, 107.) The Judgment Debtors did not appear in or in any way contest the actions or the judgments. BTMU had no involvement in the underlying litigation between plaintiffs and the Judgment Debtors. BTMU is organized under the laws of Japan and headquartered in Tokyo. (Declaration of M. Cunningham, Oct. 21, 2015, ¶ 2.) It has branches in more than 40 countries, including numerous branches in Japan. (*Id*. ¶ 3.) BTMU maintains one branch in Chicago, which offers banking services to a limited number of corporate clients with offices in the mid-western United States. (*Id*. ¶¶ 4-5.)

On August 24, 2015, plaintiffs served BTMUIL with the Citation and Subpoena. (*Id*. ¶ 1; Declaration of C. Viapiano, Oct. 21, 2015, Exs. A & B.) The Citation seeks the identification of assets that may be used to satisfy the judgments against the Judgment Debtors, and purports to prohibit BTMU from "making or allowing any transfer or other disposition of" such assets. (*Id*., Ex. A at 2.) The Subpoena seeks the production of documents and information about any such assets. (*Id*., Ex. B.) Plaintiffs have asserted that BTMU is "required to search" for assets, documents and information not just at BTMUIL, but "any BTMU branch anywhere in the world." (*Id*., Ex. C.) The Citation and Subpoena originally called for a response by September 9, 2015, but plaintiffs agreed to extend that date to October 9, 2015, and this Court later adjourned the Citation hearing to December 9, 2015. (*Id*. ¶ 5; Dkt. No. 129.)

In response to the Citation and Subpoena, BTMUIL conducted a reasonable search but did not locate any information or assets relating to the Judgment Debtors. (Cunningham Decl. ¶¶ 9-10.) On October 6, 2015, BTMU wrote to plaintiffs to inform them of the results of its search and, consistent with this Court's Case Management Procedures, to explain why the

Citation and Subpoena did not – and legally could not – extend beyond BTMUIL, much less to assets and information outside of the United States. (Viapiano Decl., Ex. D.) BTMU served formal responses and objections to the Citation and Subpoena on October 9. Counsel conferred thereafter, but plaintiffs were unwilling to accept anything less than a global search in response to the Citation and Subpoena. (*Id*. ¶ 8.) BTMU thus has no choice but to make this motion.

## ARGUMENT

If citations and subpoenas like those at issue in this case can be applied extraterritorially to banks merely because they maintain a branch in Chicago, Illinois courts would be vested with roving power over bank accounts throughout the world and enjoy virtually unbounded power to freeze assets associated with those accounts and impose significant obligations on the banks that hold them – regardless of whether those accounts bear any connection to Illinois at all. There is, however, no basis under federal or Illinois law to afford the Citation and Subpoena any such extraterritorial effect.[1]

### I.    BTMU Is Not Subject to Personal Jurisdiction in Illinois Sufficient To Give the Citation and Subpoena Extraterritorial Reach.

In *Daimler AG* v. *Bauman*, 134 S. Ct. 746 (2014), the Supreme Court fundamentally altered the extent to which a foreign corporation may be subjected to legal process in the United States. The Court rejected a rule of personal jurisdiction in which a foreign corporation is subject to "general jurisdiction in every State in which [it] engages in a substantial, continuous, and systematic course of business." *Id.* at 761 (quotation marks omitted). Finding such a rule to be "unacceptably grasping" – and inconsistent with the Due Process Clause of the Fourteenth Amendment – the Court held that "[w]ith respect to a corporation, the place of incorporation and

---

[1]    BTMU may intervene as of right under Rule 24 "for the limited purpose of moving to quash" the Citation and Subpoena in order to protect its interest in avoiding an unlawful and unwarranted response. *Barker* v. *Local 150, IUOE, AFL-CIO*, 2010 WL 934068, at *2 (N.D. Ill. Mar. 11, 2010).

principal place of business are paradig[m] . . . bases for general jurisdiction." *Id.* at 760, 761 (quotation marks omitted). Other than "in an exceptional case" where a corporation's contacts with some other place are so substantial as to render it "essentially at home," general jurisdiction exists only in those two places. *Id.* at 760-61 & n.19; *see also Kipp* v. *Ski Enter. Corp. of Wisc.*, 783 F.3d 695, 698 (7th Cir. 2015) (corporation is subject to general jurisdiction in "only two places" – its principal place of business and its place of incorporation).

Obtaining personal jurisdiction is a constitutionally necessary precondition to "a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden* v. *Fiore*, 134 S. Ct. 1115, 1121 (2014). Indeed, the Citation and Subpoena apply to BTMU "only if the court has personal jurisdiction over it." *Our Lady of Bellefonte Hosp.* v. *Ashland GI Servs., LLC*, 2012 WL 787199, at *3 (N.D. Ill. Mar. 9, 2012).[2] *Daimler*'s dramatic alteration of the general jurisdiction standard is highly relevant because BTMU is both incorporated under the laws of, and headquartered in, Japan. In the wake of *Daimler*, the Second Circuit held that there was "no basis consistent with due process for the district court [in New York] to have exercised general jurisdiction" over a Chinese bank that maintained a branch in New York, and vacated an order compelling an extraterritorial asset restraint and a discovery order. *Gucci Am., Inc.* v. *Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014).[3] BTMU likewise is not subject to general jurisdiction in Illinois merely because it maintains a small branch in Chicago that is responsible for less than one-tenth of 1% of BTMU's total gross operating profit. (Cunningham Decl. ¶ 6.) When compared to its operations in Japan – its place of incorporation and headquarters – BTMU's

---

[2]    The need for a careful assessment of personal jurisdiction is particularly acute in this case, given that plaintiffs are seeking to enforce a default judgment entered without a litigated determination on the question of whether absent defendants were themselves subject to the Court's personal jurisdiction.

[3]    *See also Motorola Credit Corp.* v. *Uzan*, 2015 WL 5613077, at *2 (S.D.N.Y. Sept. 9, 2015) (no general jurisdiction over non-party banks who received post-judgment subpoenas when banks' country of incorporation and headquarters were outside of New York).

operations in Illinois are not "so substantial and of such a nature as to render" BTMU essentially at home in Illinois. *Daimler*, 134 S. Ct. at 761 n.19. Indeed, they are not even close.

In the absence of general jurisdiction, the only other permissible basis to subject BTMU to legal process in the United States is specific jurisdiction. To invoke such jurisdiction, the relief being sought from BTMU "must be linked to the activities or contacts [of BTMU] with the forum." *Kipp*, 783 F.3d at 698; *see also Walden*, 134 S. Ct. at 1121 (for specific jurisdiction, "defendant's suit-related conduct must create a substantial connection with the forum State"). BTMUIL did not locate any information or assets relating to the Judgment Debtors, and its personnel do not have access to information about the Judgment Debtors, if any, at branches outside of the United States. (Cunningham Decl. ¶¶ 8-11.) BTMUIL's contacts with Illinois thus have no connection at all with the underlying litigation or the Judgment Debtors. Because BTMU's contacts with Illinois must directly relate to the relief that plaintiffs seek from BTMU – *i.e.*, access to the banking activity of BTMU branches overseas – there is no constitutionally permissible basis "[t]o support an exercise of specific personal jurisdiction" over BTMU. *N. Grain Mktg., LLC* v. *Greving*, 743 F.3d 487, 492 (7th Cir. 2014); *see also Hill* v. *Capital One Bank (USA), N.A.*, 2015 WL 468878, at *8 (N.D. Ill. Feb. 3, 2015) (no specific jurisdiction over bank because parties' controversy did not arise out of bank's forum-related activity).[4]

## II. The Presumption Against Extraterritorial Application Precludes Construing the Citation To Have Effect Outside of the United States.

Even if BTMU were subject to personal jurisdiction in Illinois, the Illinois judgment-enforcement statute pursuant to which plaintiffs issued the Citation does not have extraterritorial

---

[4]    *SEC* v. *Homa*, 514 F.3d 661 (7th Cir. 2008), in which the court held pre-*Daimler* and *Walden* that it had personal jurisdiction over two individuals who violated an asset freeze ordered by the district court, does not compel a different result. The court expressly premised its ruling on the individuals' U.S. citizenship. *Id.* at 675 ("[A]s citizens of the United States, [individuals] were required, once they had adequate notice, to obey the order of a United States court directed at them and their activities.").

reach and thus cannot compel action outside the United States. The Supreme Court recently re-affirmed the importance of the "canon of statutory interpretation known as the presumption against extraterritorial application." *Kiobel* v. *Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1664 (2013). The Illinois Supreme Court also recognizes "the long-standing rule of construction in Illinois which holds that a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery* v. *State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005) (quotation marks omitted). The presumption is important because it "helps ensure that the Judiciary does not erroneously adopt an interpretation of" law "that carries foreign policy consequences not clearly intended by the political branches." *Kiobel*, 133 S. Ct. at 1665. Accordingly, "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Morrison* v. *Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010).

Plaintiffs served the Citation pursuant to the judgment-enforcement procedures in Rule 1402 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-1402. Rule 1402 gives no indication that it was intended to apply extraterritorially. Indeed, to the extent that there are indications in Rule 1402 at all, they undermine any suggestion that the legislature intended the rule to reach Japan or other foreign nations. Rule 1402(b) identifies Illinois and U.S. federal law as sources of certain exemptions to the judgment-enforcement process, but does not mention foreign law. Rule 1402(b-5) seeks the identification of the dollar value of assets, but does not mention foreign currency, and Rule 1402(e) states that seized property is to be "delivered to the sheriff," a local official in Illinois. Notably, in *Gates* v. *Syrian Arab Republic*, 2013 WL 1337214 (N.D. Ill. Mar. 29, 2013), Judge Kendall considered the geographic reach of turnover proceedings under Rule 1402 and held that her ruling "should not be expanded beyond" assets held by a "domestic corporation" and did not reach "the assets of foreign entities." *Id.* at *3 n.2.

This Court similarly should hold that the Citation has no effect in foreign jurisdictions.

### III. Under the Separate Entity Rule, a Citation and Subpoena Served on BTMUIL Cannot Reach Other BTMU Branches in Japan or Elsewhere.

The "separate entity rule" is a longstanding principle of banking law pursuant to which each branch of a bank must be treated as a separate entity in the judgment-enforcement context. Just last year, the New York Court of Appeals reaffirmed the validity of this important rule, holding that it "prevents a judgment creditor from ordering a garnishee bank operating branches in New York to restrain a judgment debtor's assets held in foreign branches of the bank." *Motorola Credit Corp.* v. *Standard Chartered Bank*, 21 N.E.3d 223, 224 (N.Y. 2014). Three basic rationales give rise to the rule: it (i) recognizes the importance of "international comity and the fact that any banking operation in a foreign country is necessarily subject to the foreign sovereign's own laws and regulations;" (ii) "protect[s] banks from being subject to competing claims and the possibility of double liability;" and (iii) avoids "the intolerable burden that would otherwise be placed on banks to monitor and ascertain the status of bank accounts in numerous other branches." *Id.* at 226-27 (quotation marks omitted).

Since Illinois substantially revised its judgment-enforcement regime via the enactment of Rule 1402 in 1982, the courts have not had an occasion to expressly consider the applicability of the separate entity rule to a post-judgment citation or subpoena like the ones at issue here. The Illinois judgment-enforcement rules were, however, modeled substantially on New York law – so much so that the Illinois Appellate Court has observed that Rule 1402 "should be construed just as the New York statute." *Bank of Aspen* v. *Fox Cartage, Inc.*, 141 Ill. App. 3d 369, 490 N.E.2d 145, 147 (Ill. App. Ct. 2d Dist. 1986) (quotation marks omitted). In addition, in a closely related context, Judge Gettleman concluded that the Illinois Supreme Court would adopt the separate entity rule and held that the service of a garnishment summons on the Chicago branch of

a Swiss bank "[did] not reach assets held in Switzerland." *In re Estate of Marcos Human Rights Litig.*, 1997 WL 428544, at *2 (N.D. Ill. July 24, 1997).

In *In re Marriage of Kosmond*, the court cited a 100-year old case for the proposition that Illinois "does not follow" the separate entity rule and declined to revisit that ruling in the pre-judgment context because all of the parties involved in the action were subject to "*in personam* jurisdiction*" in Illinois. 357 Ill. App. 3d 972, 830 N.E.2d 596, 601 (Ill. App. Ct. 1st Dist. 2005) (citing *Bank of Montreal* v. *Clark*, 108 Ill. App. 163, 166-67 (Ill. App. 1903)). This Court should revisit and apply the separate entity rule in these post-judgment proceedings. First, the justification for the holding in *Bank of Montreal* – that branch banks are agents of the main bank for all purposes – "has been rejected generally by numerous courts throughout the country." *Marcos*, 1997 WL 428544, at *4. Second, the rationales for the separate entity rule identified by the New York Court of Appeals compel application of the rule on the present facts: as addressed in detail in Part IV, *infra*, construing the Citation and Subpoena to apply to other BTMU branches in Japan and elsewhere would expose BTMU to, at least, civil liability and double liability to plaintiffs and the Judgment Debtors. Third, and perhaps most important, the Supreme Court's decision in *Daimler* imposed new limits on personal jurisdiction that were not in place when *Kosmond* (or *Bank of Montreal*) was decided. Indeed, in the wake of the Supreme Court's limitations on personal jurisdiction and its admonition against applying statutes extraterritorially, the separate entity rule provides a ready mechanism for the Court to "construe [Rule 1402] so as to uphold [its] constitutionality and validity." *Ill. Crime Investigating Comm'n* v. *Buccieri*, 224 N.E.2d 236, 239 (Ill. 1967). Thus, even assuming that this Court has jurisdiction over BTMU and that Rule 1402 applies extraterritorially, a citation and subpoena served on BTMUIL still cannot reach assets and information held at other BTMU branches in Japan and elsewhere.

**IV. Under Principles of Comity, the Citation and Subpoena Should Not Compel Compliance in Violation of the Laws of Japan and Other Countries.**

Illinois courts readily recognize principles of comity, pursuant to which they "may take notice of, and defer to, the laws and judicial decisions of a foreign jurisdiction out of respect, goodwill and cooperation." *Ransom* v. *A.B. Dick Co.*, 289 Ill. App. 3d 663, 682 N.E.2d 314, 319 (Ill. App. Ct. 1st Dist. 1997). Under Illinois law, it is an abuse of discretion for a court to fail to conduct a comity analysis when the court's decision will have an impact on a non-party's ability to comply with a foreign jurisdiction's law. *Id.* at 320; *see also United States* v. *First Nat'l Bank of Chicago*, 699 F.2d 341, 345-47 (7th Cir. 1983) (reversing enforcement of IRS summons where Greek bank would face criminal liability for disclosure of client information located in Greece).

Here, construing the Citation and Subpoena to have extraterritorial effect would compel BTMU to violate the laws of its home jurisdiction, Japan, and expose BTMU to civil liability and possible regulatory and criminal sanctions. In particular, it "is unlawful under Japanese law for Japanese commercial banks such as BTMU . . . to disclose information about customer accounts in Japan, to freeze such accounts, or to transfer funds from such accounts to or for the benefit of a judgment creditor outside of Japan absent an execution judgment . . . from a Japanese court." (Declaration of H. Inoshita, Oct. 21, 2015, ¶ 9(b).) Compliance with the Citation and Subpoena would expose "the bank, its officers, and employees" to "civil liability and possible regulatory or criminal sanctions." (*Id.*) The Japanese Financial Services Agency – the functional Japanese equivalent of the Office of the Comptroller of the Currency and BTMU's primary regulator – could even rescind BTMU's license. (*Id.* ¶ 25.)[5]

---

[5]  Compliance with the Citation and Subpoena also may be barred by the laws of other countries in which BTMU maintains branches, *e.g.*, the United Kingdom, Germany and Russia. BTMU has not analyzed the laws of the more than 40 countries in which it operates, but could, if necessary, and within a reasonable period of time, provide such an analysis at the Court's request.

If the Citation were to apply to assets in Japan, BTMU also could be faced with double liability – having to pay plaintiffs in Illinois in satisfaction of the judgments without being relieved of its debt to the Judgment Debtors, if any, in Japan. When a domestic garnishee bank is ordered to turn over assets in Illinois, it is protected from the risk of double liability by statute. 735 ILCS 5/12-712. But in this case, BTMU would remain subject to Japanese law, and the Illinois statutory protection would not apply. (Inoshita Decl. ¶ 23.)[6]

In *Kosmond*, the court held that it was an "abuse of the [trial] court's discretion" to enter an order freezing a bank account in Germany without *first* conducting an evidentiary hearing concerning whether the order would cause the garnishee bank to violate German law. 830 N.E.2d at 602. That principle should apply *a fortiori* here, given that the Citation and Subpoena are lawyer-issued documents that never were reviewed by a judge. Indeed, applying the logic of *Kosmond* compels the conclusion that post-judgment citations and subpoenas like those here cannot have extraterritorial reach because their issuance is not preceded by a comity analysis.

Plaintiffs also have a means of enforcing their judgments in Japan by initiating a judicial proceeding there. The Japanese Civil Execution Act and Code of Civil Procedure "provide a mechanism for a judgment creditor to enforce a foreign judgment." (Inoshita Decl. ¶ 12.)

BTMUIL has complied in good faith with the Citation and Subpoena to the extent that it is able to do so in Illinois. Because extraterritorial compliance would violate Japanese law (and potentially other countries' laws) and expose BTMU to liability, and because an alternative mechanism exists by which plaintiffs can enforce their judgments, the Citation and Subpoena should be quashed insofar as they apply outside of Illinois.

---

[6] The same may be true in other countries in which BTMU operates. Because this Court cannot provide BTMU with any protection against such double liability, construing the Citation to apply to assets in Japan (or elsewhere) would violate the Due Process Clause of the Fourteenth Amendment. U.S. Const. Amend. XIV, § 1, cl. 3; *W. Union Telegraph Co.* v. *Pa.*, 368 U.S. 71, 75 (1961).

**V.      The FSIA Does Not Permit the Restraint of Assets Outside of the United States.**

The Citation also is invalid under the FSIA, 28 U.S.C. § 1602 *et seq.*, to the extent that it

seeks to reach assets of the Judgment Debtors outside the United States.[7]  "The FSIA did not

purport to authorize execution against a foreign sovereign's property, or that of its

instrumentality, wherever that property is located around the world.  We would need some hint

from Congress before we felt justified in adopting such a breathtaking assertion of extraterritorial

jurisdiction."  *Autotech Techs. LP* v. *Integral Research & Dev. Corp.*, 499 F.3d 737, 750 (7th Cir.

2007).[8]  FSIA Section 1610(g), the basis for the Citation, contains no indication that Congress

intended it to apply abroad.[9]  Courts applying Section 1610(g) thus have applied it only to assets

in the United States.  *E.g.*, *Gates* v. *Syrian Arab Republic*, 755 F.3d 568, 573 (7th Cir. 2014)

(Section 1610(g) "allow[s] attachment of assets in the United States"); *Peterson* v. *Islamic*

*Republic of Iran*, 2008 WL 5046327, at *1 n.1 (N.D. Cal. Nov. 24, 2008) ("doubtful"

Section 1610(g) "reach[es] property outside of the United States"), *aff'd*, 627 F.3d 1117, 1123

n.2 (9th Cir. 2010) ("judgment creditors can now reach any U.S. property in which Iran has any

interest").[10]  Accordingly, insofar as the Citation seeks to restrain assets of a sovereign outside of

---

[7]    Courts must address sovereign immunity questions whenever they arise and regardless of who raises them.  *Rubin* v. *Islamic Republic of Iran*, 637 F.3d 783, 799 (7th Cir. 2011).

[8]    To the extent that the Citation seeks to reach assets of Iran's central bank, any such assets are separately protected from restraint.  28 U.S.C. § 1611(b)(1).  A plaintiff seeking to restrain such property must "rebut th[e] presumption [of immunity] by demonstrating with specificity that the funds [were] not being used for central banking functions."  *NML Capital, Ltd.* v. *Banco Central de la República Argentina*, 652 F.3d 172, 194 (2d Cir. 2011).  Plaintiffs here have not even attempted to do so.

[9] The legislative history of Section 1610(g), which was added to the FSIA as part of the National Defense Authorization Act of 2008, Pub. L. No. 110-181, § 1083 (2008), also does not contain any indication that Congress intended Section 1610(g) to apply extraterritorially.

[10] This principle of law does not yield when the acts of sovereign are reprehensible, and there are many reported cases recognizing the sovereign immunity of assets of Iran where appropriate.  *See*, *e.g.*, *Rubin*, 637 F.3d at 800 (Iran's property in United States is presumed immune from attachment absent a

the United States, it is invalid because those assets retain their full immunity from attachment and execution.[11]

## VI. Requiring a Global Search for Assets, Documents and Information Would Subject BTMU to Unnecessary and Improper Burdens.

Even if the above legal deficiencies did not apply, requiring BTMU to (i) perform a global search for assets, documents and information and (ii) restrain assets would make the Citation and Subpoena unduly burdensome. BTMU's "[n]on-party status is a significant factor to be considered" in determining whether the burdens imposed by the Citation and Subpoena are undue. *Tresona Multimedia, LLC* v. *Legg*, 2015 WL 4911093, at *2 (N.D. Ill. Aug. 17, 2015). With branches in over 40 countries, BTMU would need to implement a vast and unprecedented search if the Citation and Subpoena were given global reach. (Cunningham Decl. ¶ 3.) Imposing such a burden on a non-party goes well beyond the limits of reasonableness.

## VII. Application of Rule 1402 Abroad Would Violate the Dormant Commerce Clause.

The extraterritorial application of Rule 1402 also would be unconstitutional because it would regulate commerce wholly outside of Illinois, infringing upon the so-called "dormant" powers reserved for the federal government under the Commerce Clause of the U.S. Constitution. U.S. Const. Art. I, § 8, cl. 3. These dormant powers (referred to as the Dormant Commerce Clause) preclude state interference with national and particularly international commerce regardless of whether the federal government has actively regulated the subject area. Specifically, "[t]he negative or dormant implication of the Commerce Clause prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and

---

showing that an exception to immunity applies); *Peterson*, 627 F.3d at 1131-32 ("Iran's rights to payment . . . are not 'property in the United States' and are immune from execution.").

[11]    The Citation also references Section 201(a) of the Terrorism Risk Insurance Act (Viapiano Decl., Ex. A at 2), but that section applies only to "blocked assets," Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002), which, by definition, are in the United States.

thereby impedes free private trade in the national marketplace." *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009) (quotation marks omitted).

If a statute "directly regulates or discriminates against interstate commerce," it is unconstitutional *per se* and courts "generally str[ike] down the statute without further inquiry." *Alliant Energy Corp.* v. *Bie*, 330 F.3d 904, 911 (7th Cir. 2003) (quotation marks omitted). Alternatively, if a statute "has only indirect or incidental effects on interstate commerce and regulates evenhandedly," it violates the Dormant Commerce Clause when the "burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* (quotation marks omitted). Extraterritorial application of Rule 1402 fails both tests.

Applying Rule 1402 extraterritorially is unconstitutional *per se*. As the Supreme Court has held, "the Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy* v. *Beer Inst.*, 491 U.S. 324, 336 (1989) (quotation marks omitted). This is because a "statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority." *Id.* "The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State." *Id.* An extraterritorial state law is evaluated "not only by considering the consequences of the statute itself, but also by considering how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation." *Id.*

Here, if Rule 1402 required BTMU to restrain assets in Japan or elsewhere, it would directly regulate banking activity entirely outside of Illinois (and even the United States), without regard for foreign law. Such extraterritorial reach also risks creating a judgment-enforcement

regime that, if replicated, would create inconsistent obligations for garnishees subject to personal jurisdiction in other states or countries. For example, if two or more states allowed turnover of restrained assets outside of the state, a non-party over which both states' courts claim to have personal jurisdiction could be ordered to transfer the same asset to two different places. This is precisely the sort of extraterritorial regulation that impermissibly burdens interstate commerce. *See Healy*, 491 U.S. at 336-37.[12] A similar rule adopted by foreign jurisdictions would impermissibly invade the province of Illinois and United States law. That is, foreign courts with extraterritorial restraining power could freeze bank accounts in the United States. This is likely why foreign courts and legislatures confronting extraterritorial garnishment or restraint have found that they lack the power to levy upon assets outside their borders.[13] Extraterritorial application of Rule 1402 would place Illinois squarely in conflict with the laws of numerous U.S. allies and trading partners. Rule 1402 cannot, therefore, withstand the "even greater scrutiny" under which the application of the law to international commerce must be evaluated. *Nat'l Foreign Trade Council* v. *Narsios*, 181 F.3d 38, 65 (1st Cir. 1999).

In the alternative, even if Rule 1402 were not unconstitutional *per se*, it still would violate the Dormant Commerce Clause because the burden imposed on interstate commerce from application in Japan is excessive in relation to any benefit here. A state law is unconstitutional if "the burden imposed on interstate commerce is clearly excessive in relation to the putative local

---

[12] It is thus unsurprising that courts in virtually every state that has considered whether their judgment-enforcement laws have extraterritorial reach have concluded that they do not. *E.g.*, *Livingston* v. *Naylor*, 920 A.2d 34, 54 (Md. App. 2007); *Ferguson* v. *Ferguson*, 634 N.E.2d 506, 508-09 (Ind. App. 1994); *Polacke* v. *Super. Ct. In & For Cnty. of Maricopa*, 823 P.2d 84, 90-91 (Ariz. App. 1991).

[13] *E.g.*, Code of Civil Enforcement of Japan, Art. 24 (Law No. 4, 1979) (Japanese court enforcing a foreign judgment must either have jurisdiction over place where assets are located or over the judgment debtor's domicile); *Viswanathan* v. *Wajid*, A.I.R. 1963 S.C. 1 (India) (India courts will not claim jurisdiction "over res outside the jurisdiction," in part "because it will not be recognised by other courts" and because a court will generally not "deal directly or indirectly with title to immovable property outside the jurisdiction of the State from which it derives its authority").

benefits." *United Haulers Ass'n, Inc.* v. *Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 346 (2007) (internal quotation marks and alterations omitted). The extraterritorial application of Rule 1402 to allow the restraint of assets in Japan would impose significant burdens on interstate and international commerce. First, it inarguably would conflict with Japanese banking law. (Inoshita Decl. ¶¶ 9-16.) Second, the restraint of Iranian assets held by a Japanese bank would directly interfere with relations between Japan and the United States and could potentially frustrate the administration of economic sanctions in place against Iran. And, if Rule 1402 were applied abroad, it would vest Illinois courts with authority to freeze assets held by any international bank anywhere in the world, so long as the bank has a branch in Illinois.

Further, any interest of Illinois in enforcing judgments is no greater than that of any sister state or other countries. Thus, Rule 1402, when extraterritorially applied, imposes significant burdens on interstate commerce with only minimal, if any, benefit to Illinois, and is unconstitutional. *See Pike* v. *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).[14]

## CONCLUSION

For the foregoing reasons, the Court should permit limited intervention and quash the Citation and Subpoena insofar as they purport to apply outside of Illinois.[15]

---

[14] The extraterritorial application of Rule 1402 also is unconstitutional because it would usurp the federal government's exclusive powers over foreign affairs. U.S. Const. art. I, § 8, cls. 1, 3, 4, 10, 11; § 9, cl. 8; art. II, § 2, cls. 1, 2; § 3; art. III, § 3, cl. 2. As the Supreme Court has held, "involvement in foreign affairs and international relations" is "forbidden state activity." *Zschernig* v. *Miller*, 389 U.S. 429, 436 (1968). Rule 1402 thus cannot be interpreted to restrain funds outside of the United States because doing so would interfere with the federal government's exclusive power to set foreign policy.

[15] On October 21, 2015, after counsel had met and conferred about the Citation and Subpoena, plaintiffs served a subpoena on BTMUIL purporting to compel a corporate representative to testify about "the details of all financial accounts" of the Judgment Debtors or their affiliates "maintained by [BTMU and] located anywhere in the world." (Viapiano Decl., Ex. E at 4.) Putting aside that a deposition is far from the most efficient means of obtaining such information, the subpoena is duplicative of the Citation, which purports to require a witness to appear and testify, and, to the extent that it seeks information outside of Illinois, improper for all of the foregoing reasons. BTMU intends to move to quash.

Dated: October 22, 2015

Respectfully submitted,

Bruce E. Clark
Bradley P. Smith
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel.:  (212) 558-4000
Fax:  (212) 558-3588
clarkb@sullcrom.com
smithbr@sullcrom.com

*Of Counsel*

*/s/ Christopher M. Viapiano*
Christopher M. Viapiano
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Tel.:  (202) 956-7500
Fax:  (202) 956-7056
viapianoc@sullcrom.com

Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel:  (312) 782-0600
Fax:  (312) 701-7711
bmiller@mayerbrown.com

*Attorneys for non-party The Bank*
    *of Tokyo-Mitsubishi UFJ, Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

  I, Christopher M. Viapiano, an attorney, hereby certify that on October 22, 2015, I caused a true and correct copy of the foregoing **NON-PARTY THE BANK OF TOKYO-MITSUBISHI UFJ, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LIMITED INTERVENTION AND TO QUASH THE CITATION AND SUBPOENA** to be filed and served electronically via the court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

         */s/ Christopher M. Viapiano*
         Christopher M. Viapiano
         SULLIVAN & CROMWELL LLP
         1700 New York Avenue, N.W., Suite 700
         Washington, D.C. 20006
         Tel.:  (202) 956-7500
         Fax:  (202) 956-7056
         viapianoc@sullcrom.com