UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHLOMO LEIBOVITCH, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, THE, *et al.*, <br><br> *Defendants.* | Civil Case No. 08 C 1939 <br><br> Hon. Reuben Castillo |

## **DECLARATION OF HIROTADA INOSHITA**

Hirotada Inoshita, being duly sworn, deposes and says:

1. I am an attorney and founding partner of Marunouchi Kokusai Law Office. I have been licensed to practice law in Japan since April 1997. I submit this affirmation in support of The Bank of Tokyo-Mitsubishi UFJ, Ltd.'s ("BTMU") Motion to Quash the Citation and Subpoena.

2. I have extensive experience with Japanese laws relating to banking business (including, without limitation, the Japanese Banking Act and the regulations thereunder).

3. I have been asked to provide my opinions on the following questions:

(a) whether Japanese law prohibits Japanese commercial banks from complying with a subpoena and citation issued by a lawyer in connection with U.S. litigation directing a bank (1) to disclose information about customer accounts in Japan, and (2) to freeze such accounts; and

(b) what consequences are likely to befall Japanese commercial banks or their officers and employees under Japanese law were they to do any of the preceding acts.

4.  I also have been asked to provide my opinion on whether the answer to the preceding questions would be different if instead of a subpoena and citation issued by a lawyer in connection with U.S. litigation, a U.S. court ordered a Japanese commercial bank to disclose information about customer accounts in Japan, to freeze such accounts, and, in addition, to transfer funds from such accounts to a judgment creditor outside of Japan.

## BACKGROUND

5.  Education: Keio University, Faculty of Law (LL.B. 1995); The George Washington University Law School (LL.M. 2002).

6.  Qualifications: I am admitted to practice law in Japan (1997) and in the State of New York (2003).

7.  Attached as Exhibit A is a true and correct copy of my curriculum vitae, which provides further information concerning my credentials.

## MATERIALS REVIEWED

8.  In the course of preparing this declaration, I reviewed the Subpoena to Produce Documents and Citation to Discover Assets Pursuant to Rule 69, including the attached exhibits and related correspondence. I also conducted independent research, as necessary, in the course of preparing this declaration. Attached as Exhibit B is a list of Japanese laws and regulations referred to in this declaration, as well as the Japanese version of such laws and regulations accompanied by an unofficial English translation.

## SUMMARY OF OPINION

9.  The conclusions I draw from a consideration of the relevant documents and my own experience and research into existing Japanese law are as follows:

    (a) It is unlawful under Japanese law for Japanese commercial banks such as BTMU to comply with a subpoena and citation issued by a lawyer in connection with U.S. litigation to disclose information about customer

        accounts in Japan, and to freeze such accounts absent an execution judgment or an execution decision from a Japanese court; and if a Japanese bank, such as BTMU or an officer or employee of the bank, were to do any of the preceding acts in Japan, the bank, its officers, and employees could be exposed to civil liability and possible regulatory or criminal sanctions.

    (b)    It also is unlawful under Japanese law for Japanese commercial banks such as BTMU to comply with a U.S. court order to disclose information about customer accounts in Japan, to freeze such accounts, and, in addition, to transfer funds from such accounts to or for the benefit of a judgment creditor outside of Japan absent an execution judgment or an execution decision from a Japanese court; and if a Japanese bank, such as BTMU or an officer or employee of the bank, were to do any of the preceding acts in Japan, the bank, its officers, and employees could be exposed to civil liability and possible regulatory or criminal sanctions.

    (c)    In addition, absent an order or a decision from a Japanese court, under existing Japanese law the rights of a depositor in a Japanese bank with regard to its deposits would be unaffected if the bank were to transfer the amount of that deposit to Illinois pursuant to an order of a court in Illinois. In other words, the bank would remain liable to the depositor and face double liability even after such a transfer.

**I.    It Is Unlawful Under Japanese Law For Japanese Commercial Banks To Comply With A Subpoena And Citation Issued By A Lawyer In Connection With U.S. Litigation Or An Order Of A U.S. Court To Disclose Information About Customer Accounts In Japan, To Freeze Such Accounts, Or To Transfer Funds From Such Accounts To A Judgment Creditor Outside Of Japan, Absent An Execution Judgment From A Japanese Court.**

    10.    Under Japanese law, when a party enters into a deposit contract with a bank and deposits funds into a bank account, the money is no longer the property of the depositor. Instead, because under general principles of Japanese law applicable here, the ownership of money corresponds with possession, the deposited funds become the asset of the bank and the depositor becomes a creditor of the bank. The depositor acquires a contractual claim against the bank in the amount of the deposited funds, and the bank has a contractual obligation to repay the funds to the depositor at the stated maturity (time deposit) or upon demand (demand deposit).

11. Moreover, under existing Japanese law and practice, a bank is required to keep confidential information concerning transactions conducted with its customers or any other information that it has obtained in relation to such transactions without having obtained the consent of the customer. (Tokyo District Court's judgment on November 9, 1981, 467 Hanrei taimuzu 14.) In principle, it will be a breach of the duty of confidentiality if a Japanese branch of a bank, such as BTMU, were to disclose to a third party any of the following information:

(a) a list of any bank accounts maintained by customers at the Japanese branches of BTMU, as well as additional information about each account, including the date the accounts were opened, the location of each account, the amounts on deposit in these accounts, the interest rates on the accounts, whether each account is open or closed, and, if closed, the date of closing and the amount of deposit withdrawn on the date of closing;

(b) information about any other debts or credits of the customers that are due, owing, or which will become due or payable to the customers; and

(c) information about any other real, personal, tangible and intangible property interests held by the customers.

12. In Japan, the Japanese Civil Execution Act (Law No. 4 of 1979, as amended, "CEA") and the Japanese Code of Civil Procedure (Law No. 109 of 1996, as amended, "CCP") provide a mechanism for a judgment creditor to enforce a foreign judgment if certain conditions under those acts are satisfied. Japanese law does not provide any other method to allow a judgment creditor who has obtained a foreign court judgment to enforce that judgment in Japan. Accordingly, a bank does not have any legal basis to freeze a judgment debtor's account opened with it and to transfer funds from such an account overseas based upon a foreign lawyer's subpoena and citation or a foreign court's order, unless a judgment creditor follows the procedures prescribed by the CEA and the CCP in a competent Japanese court.

13. Neither a foreign lawyer's subpoena and citation nor a foreign court order requiring disclosure of customer information provide a basis to excuse the duty of confidentiality

imposed on Japanese commercial banks. Thus, for example, the Japanese Personal Information Protection Act (Law No. 57 of 2003) provides an exemption to the duty of confidentiality where disclosure of customer data is made "based on law." The relevant Japanese regulator, the Financial Services Agency ("JFSA"), stated, in its response to public comments on proposed administrative guidelines for protection of personal information by financial institutions, that foreign law does not constitute "law" for the purpose of that statutory exemption.

14. In order to attach a judgment debtor's account opened with the Japanese branches of BTMU, a judgment creditor needs, at a minimum, to obtain a judgment from a Japanese court specifically to enforce a foreign judgment, such as the one at issue in this case, pursuant to the procedures provided under the applicable Japanese statutes referenced in this declaration. As a prerequisite for such an enforcement judgment to be granted, the foreign judgment must be recognized under Japanese law.

15. Articles 22(6) and 24 of the CEA and Article 118 of the CCP govern Japanese execution of foreign court judgments. Article 22(6) of the CEA provides for compulsory execution of a foreign court judgment when there is a final and binding execution judgment of a Japanese court. Article 24 of the CEA lists the necessary conditions for a Japanese court to issue such an execution judgment, which include, *inter alia*, the following:

> 24(1) An action seeking an execution judgment for a judgment of a foreign court shall be under the jurisdiction of the district court having jurisdiction over the location of the general venue of the obligor, and when there is no such general venue, it shall be under the jurisdiction of the district court having jurisdiction over the location of the subject matter of the claim or the seizable property of the obligor.

> \* \* \*

> 24(3) The action set forth in paragraph (1) shall be dismissed without prejudice when it is not proved that the judgment of a foreign court has become final and binding or when such judgment

fails to satisfy the requirements listed in the items of Article 118 of the Code of Civil Procedure.

16. Article 118 of the CCP sets out the following requirements for a final and binding foreign court judgment to satisfy Article 24(3)'s criteria for the issuance of a Japanese court execution judgment:

> A final and binding judgment rendered by a foreign court shall be effective only where it meets all of the following requirements:
>
> (i) The jurisdiction of the foreign court is recognized under laws or regulations or conventions or treaties.
>
> (ii) The defeated defendant has received a service (excluding a service by publication or any other service similar thereto) of a summons or order necessary for the commencement of the suit, or has appeared without receiving such service.
>
> (iii) The content of the judgment and the court proceedings are not contrary to public policy in Japan.
>
> (iv) There is reciprocity between the foreign state and Japan.

17. I understand that the judgment creditors here have not obtained a judgment from a Japanese court specifically authorizing them to enforce the judgment issued in *Leibovitch, et al.* v. *Islamic Republic of Iran, The, et al.*, No. 08 C 1939 (N.D. Ill.), pursuant to the procedures provided under the applicable Japanese statutes discussed above.

**II. BTMU And Its Employees Will Be Exposed To Civil Liability And Possible Regulatory Or Criminal Sanctions Under Existing Japanese Law If They Disclose Customer Information Or Freeze Or Transfer Customer Assets In Japan.**

*A. Relevant Japanese Law*

18. A breach of the duty of confidentiality by a bank gives rise to contractual or tort liability for damages incurred by a customer whose information has been, without justifiable reason, disclosed to a third party in violation of such duty of confidentiality. (Tokyo District Court's judgment on November 9, 1981, 467 Hanrei taimuzu 14.)

19. An employee or officer of a bank may also be at risk of being held criminally liable for a breach of duty that promotes a third party's or his or her own interests over that of the bank's customers. Article 247 (Breach of Trust) of the Japanese Penal Code (Law No. 45 of 1907, as amended) states:

> When a person who is in charge of the affairs of another, for the purpose of promoting his/her own interests or the interests of a third party, or inflicting damage on another, commits an act in breach of his/her legal duty and causes financial loss to another, imprisonment with work for not more than 5 years or a fine of not more than 500,000 yen shall be imposed.

20. In addition, BTMU is a bank licensed under the Japanese Banking Act (Law No. 59 of 1981, as amended) and, accordingly, is subject to the general supervisory authority of the relevant Japanese regulator, the JFSA. The Japanese Banking Act requires a licensed bank to take measures to ensure the soundness and appropriateness of its operation, which includes appropriate handling of customer information it has obtained in relation to its business. (Article 12-2(2) of the Banking Act.) In addition, the JFSA's supervisory guidelines, which the JFSA applies in deciding whether to impose administrative sanctions on banks, state that it is important for a bank to establish internal controls that enable the bank to appropriately administer customer information. (JFSA's Comprehensive Guidelines for Supervision of Major Banks, etc. III-3-3-3-1.)

### B. *Consequences of Complying with the Subpoena and Citation (or a Court Order)*

21. The citation served on the Chicago branch of BTMU prohibits it from "making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtors or to which they may be entitled or which may be acquired by or become due to them." (Citation at 2.) Correspondence accompanying the citation states that the citation applies to property in which a

judgment debtor has an interest "at any and all branches or subsidiaries of BTMU." (Tolchin Ltr. at 1.)

22. If, however, a Japanese bank, such as BTMU, were to freeze a customer's access to funds in its Japanese branches or transfer to a third party assets that the bank owes to a customer absent an execution judgment from a Japanese court, it would be breaching the relevant contract with its customers.

23. Neither a foreign lawyer's subpoena and citation nor an Illinois court order can excuse BTMU from Japanese civil liability for a breach of its monetary obligation under a contract with a customer. Nor would compliance with such a foreign lawyer's subpoena and citation or a foreign court's order relieve the bank of its obligations to its customer under existing Japanese law. This creates the prospect that BTMU will be doubly liable for the value of the monetary obligation it owes its account holder.

24. Furthermore, if a bank freezes a customer's account in its Japanese branches and transfers funds from such account absent an execution judgment from a Japanese court, and treats its obligations to such customer under such account as being excused, the responsible employee or officer of the bank may be at risk of being held criminally liable under Japanese law. This is because, under Article 247 of the Penal Code set forth above, he or she may be seen as having promoted the judgment creditor's interests in collecting the foreign judgment, or having promoted the bank's interests in avoiding sanctions for violation of a U.S. subpoena and citation or court order that have not been properly incorporated into a valid and binding execution judgment of a Japanese court, at the expense of its customers.

25. A bank that breaches its duty of confidentiality to its customer is likewise liable to the customer for any damages caused, and, as noted above, an order of an Illinois court

will not excuse that breach. Furthermore, if the JFSA has found that a bank has violated any laws or regulations, including the legal obligation of confidentiality to a customer, it can exercise its supervisory power to impose administrative orders on the bank pursuant to the Japanese Banking Act. Such administrative orders may include a rescission of the bank's license or an order to suspend the bank's business operations indefinitely or for a certain period of time. Accordingly, in this case, if the Japanese branches are found to have breached their duty of confidentiality because they disclosed the relevant information to the judgment debtors or breached other contractual duties by freezing and transferring its customer's assets, BTMU may become subject to such administrative sanctions under the JFSA.

*   *   *

26. As discussed above, it is contrary to Japanese law for Japanese commercial banks to comply with a foreign lawyer's subpoena and citation or a foreign court's order to disclose information about customer accounts in Japan, to freeze such accounts, or to transfer funds from such accounts to a judgment creditor outside of Japan, absent an execution judgment from a Japanese court.

27. Consequently, it is my opinion that if BTMU were to comply with the subpoena or the citation issued in connection with the above-referenced case, it would be acting illegally under the existing law of Japan and subject to potential civil or double liability and possible criminal or regulatory sanctions in Japan.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of October 2015 in Tokyo, Japan.

                                                      Hirotada Inoshita

# **EXHIBIT A**

**EXHIBIT A**
**Curriculum Vitae of Hirotada Inoshita**

### Education

| | |
|---|---|
| August 2001 - May 2002 | **The George Washington University Law School**<br>• Master of Laws (LL.M.) |
| April 1995 - April 1997 | **The Legal Training and Research Institute of the Supreme Court of Japan** (Saitama, Japan)<br>• Diploma of Completion |
| April 1991 - March 1995 | **Keio University, Faculty of Law** (Tokyo, Japan)<br>• Bachelor of Laws (LL.B.) |

### Professional Experience

| | |
|---|---|
| June 2012 - Present | **Maunouchi Kokusai Law Office (Tokyo, Japan)**<br>**Legal practice focused mainly on capital markets, origination of venture capital funds, banking transactions, and regulatory and compliance.** |
| April 1997 - May 2002<br>May 2003 - November 2003<br>November 2004 - May 2012 | **Nishimura & Asahi (Tokyo, Japan)** |
| September 2002 - May 2003 | **Foreign Trainee, Sidley Austin Brown & Wood LLP** (New York) |
| December 2003 - October 2004 | **Citibank, N.A., (Tokyo)** |
| September 2007 - 2012 | **Lecturer, Keio Law School** |

### Professional Memberships

| | |
|---|---|
| 1997 - present | Member of the **Japan Federation of Bar Associations** and the **Dai-ichi Tokyo Bar Association** |
| 2003 - present | Member of the **New York State Bar Association** |

### Publications

- "The Introduction of a Bank Holding Company System in Japan" (Butterworths Journal of International Banking and Financial Law (London), September 1998)

- "The Enactment of the Japanese Limited Partnership Act" (Butterworths Journal of International Banking and Financial Law (London), March 1999)

- "The Finance Law Encyclopedia" (September 2003) (Co-Author), Shojihomu Co., Ltd.

- "Ronten-taikei Financial Instruments and Exchange Law 2" (July 2015)(Co-Author), Dai-ichi Hoki

# **<u>EXHIBIT B</u>**

**Exhibit B**

I.	刑法/Penal Code

（背任）
(Breach of Trust)
第二百四十七条　他人のためにその事務を処理する者が、自己若しくは第三者の利益を図り又は本人に損害を加える目的で、その任務に背く行為をし、本人に財産上の損害を加えたときは、五年以下の懲役又は五十万円以下の罰金に処する。
Article 247	When a person who is in charge of the affairs of another, for the purpose of promoting his/her own interest or the interest of a third party, or inflicting damage on another, commits an act in breach of legal duty and causes financial loss to another, imprisonment with work for not more than 5 years or a fine of not more than 500,000 yen shall be imposed.

II.     民事執行法/Civil Execution Act

(債務名義)
(Title of Obligation)
第二十二条　　　強制執行は、次に掲げるもの(以下「債務名義」という。)により行う。
Article 22     Compulsory execution shall be carried out based on any of the following (hereinafter referred to as the "title of obligation"):

一　　　確定判決
(i)     A final and binding judgment

二　　　仮執行の宣言を付した判決
(ii)    A judgment with a declaration of provisional execution

三　　　抗告によらなければ不服を申し立てることができない裁判(確定しなければその効力を生じない裁判にあつては、確定したものに限る。)
(iii)   A judicial decision against which an appeal may be entered only by filing an appeal against ruling (in the case of a judicial decision that is not effective until it becomes final and binding, it shall be limited to one that is already final and binding)

三の二　仮執行の宣言を付した損害賠償命令
(iii)-2  An order of compensation of damages with a declaration of provisional execution

四　　　仮執行の宣言を付した支払督促
(iv)    A demand for payment with a declaration of provisional execution

四の二　訴訟費用、和解の費用若しくは非訟事件(他の法令の規定により非訟事件手続法（平成二十三年法律第五十一号）の規定を準用することとされる事件を含む。)若しくは家事事件の手続の費用の負担の額を定める裁判所書記官の処分又は第四十二条第四項に規定する執行費用及び返還すべき金銭の額を定める裁判所書記官の処分(後者の処分にあつては、確定したものに限る。)
(iv)-2   A disposition by a court clerk specifying the amount of the burden of court costs, costs for settlement or costs for procedures of non-contentious cases (including cases to which the provisions of the Non-Contentious Case Procedures Act (Law No. 51 of 2011) are applied *mutatis mutandis* by provisions of another statute) or family cases or a disposition by a court clerk determining the execution costs and the amount of money to be returned prescribed in Article 42(4) (in the case of the latter disposition, it shall be limited to one that is already final and binding)

五　　　金銭の一定の額の支払又はその他の代替物若しくは有価証券の一定の数量の給付を目的とする請求について公証人が作成した公正証書で、債務者が直ちに強制執行に服する旨の陳述が記載されているもの(以下「執行証書」という。)
(v)     A notarial deed prepared by a notary with regard to a claim for payment of a certain amount of money or any other fungible thing or a certain amount of securities, which contains a statement to the effect that the obligor will immediately accept compulsory execution (hereinafter referred to as an "execution deed")

六　　　確定した執行判決のある外国裁判所の判決
(vi)    A judgment of a foreign court for which an execution judgment has become final and binding

六の二　確定した執行決定のある仲裁判断
(vi)-2   An arbitral award for which an execution order has become final and binding

七　　　　確定判決と同一の効力を有するもの(第三号に掲げる裁判を除く。)
(vii)　　A document that has the same effect as a final and binding judgment (excluding the judicial decision set forth in item (iii))

(外国裁判所の判決の執行判決)
(Execution Judgment for a Judgment of a Foreign Court)
第二十四条　　外国裁判所の判決についての執行判決を求める訴えは、債務者の普通裁判籍の所在地を管轄する地方裁判所が管轄し、この普通裁判籍がないときは、請求の目的又は差し押さえることができる債務者の財産の所在地を管轄する地方裁判所が管轄する。
Article 24 (1)　　An action seeking an execution judgment for a judgment of a foreign court shall be under the jurisdiction of the district court having jurisdiction over the location of the general venue of the obligor, and when there is no such general venue, it shall be under the jurisdiction of the district court having jurisdiction over the location of the subject matter of the claim or the seizable property of the obligor.

2　　　　執行判決は、裁判の当否を調査しないでしなければならない。
(2)　　An execution judgment shall be made without investigating whether or not the judicial decision is appropriate.

3　　　　第一項の訴えは、外国裁判所の判決が、確定したことが証明されないとき、又は民事訴訟法第百十八条各号に掲げる要件を具備しないときは、却下しなければならない。
(3)　　The action set forth in paragraph (1) shall be dismissed without prejudice when it is not proved that the judgment of a foreign court has become final and binding or when such judgment fails to satisfy the requirements listed in the items of Article 118 of the Code of Civil Procedure.

4　　　　執行判決においては、外国裁判所の判決による強制執行を許す旨を宣言しなければならない。
(4)　　An execution judgment shall declare that compulsory execution based on the judgment by a foreign court shall be permitted.

<u>III.    民事訴訟法/Code of Civil Procedure</u>

(外国裁判所の確定判決の効力)
(Effect of Final and Binding Judgment Rendered by Foreign Court)
第百十八条    外国裁判所の確定判決は、次に掲げる要件のすべてを具備する場合に限り、その効力を有する。
Article 118    A final and binding judgment rendered by a foreign court shall be effective only where it meets all of the following requirements:

一    法令又は条約により外国裁判所の裁判権が認められること。
(i)    The jurisdiction of the foreign court is recognized under laws or regulations or conventions or treaties.

二    敗訴の被告が訴訟の開始に必要な呼出し若しくは命令の送達(公示送達その他これに類する送達を除く。)を受けたこと又はこれを受けなかったが応訴したこと。
(ii)    The defeated defendant has received a service (excluding a service by publication or any other service similar thereto) of a summons or order necessary for the commencement of the suit, or has appeared without receiving such service.

三    判決の内容及び訴訟手続が日本における公の秩序又は善良の風俗に反しないこと。
(iii)    The content of the judgment and the court proceedings are not contrary to public policy in Japan.

四    相互の保証があること。
(iv)    A mutual guarantee exists.