## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SHLOMO LEIBOVITCH, *et al.*,

        *Plaintiffs*,

v.

ISLAMIC REPUBLIC OF IRAN, THE, *et al.*,

        *Defendants*.

Civil Case No. 08 C 1939

Hon. Ruben Castillo

## MEMORANDUM OF LAW OF NON-PARTIES BNP PARIBAS AND BNP PARIBAS, CHICAGO BRANCH IN SUPPORT OF THEIR MOTION TO QUASH THE SUBPOENAS AND CITATION TO DISCOVER ASSETS

MANDELL MENKES LLC
One North Franklin Street, Suite 3600
Chicago, Illinois 60606
(312) 251-1000

Local Counsel:
Brendan J. Healey

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ONE LIBERTY PLAZA
New York, New York 10006
(212) 225-2000

*Attorneys for non-parties BNP Paribas and BNP Paribas, Chicago Branch*

Of Counsel:

Carmine D. Boccuzzi (*pro hac vice* pending)
Diego A. Zambrano (*pro hac vice* pending)

October 29, 2015

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................... 1

FACTS ....................................................................................... 2

ARGUMENT .............................................................................. 3

    I.    THE SUBPOENAS AND CITATION SHOULD BE QUASHED
        AS THERE IS NO PERSONAL JURISDICTION OVER BNPP ......... 4

    II.   THE SUBPOENAS AND CITATION DO NOT APPLY
        EXTRATERRITORIALLY ................................................. 7

    III.  THE SUBPOENAS FLOUT THE BASIC STANDARDS FOR POST-
        JUDGMENT DISCOVERY UNDER FEDERAL RULES 26 AND 69 AS
        THEY IMPOSE AN UNDUE BURDEN AND SEEK
        IRRELEVANT INFORMATION ......................................... 9

    IV.  PLAINTIFFS SHOULD USE THE HAGUE CONVENTION
        OR THE PROCEDURES AVAILABLE IN RELEVANT
        FOREIGN JURISDICTIONS ........................................... 11

CONCLUSION ......................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

735 ILCS 5/2-1402 ................................................................... 7

28 U.S.C. § 1610 .............................................................. 8, 9, 12

28 U.S.C. § 1781 ................................................................... 11

Fed. R. Civ. P. 26 ............................................................ 3, 9, 10

Fed. R. Civ. P. 45 ................................................................ 3-4

Fed. R. Civ. P. 69 ................................................................. 10

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ...................................................... 6

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989) ............................................................... 8

*Autotech Techs. LP v. Integral Research & Dev. Corp.*,
499 F.3d 737 (7th Cir. 2007) ...................................................... 8

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100, 835 N.E.2d 801 (2005) ........................................... 7

*Basic v. Fitzroy Eng'g, Ltd.*,
949 F. Supp. 1333 (N.D. Ill. 1996), *aff'd*, 132 F.3d 36 (7th Cir. 1997) ........... 7

*Blagman v. Apple, Inc.*,
12 Civ. 5453 (ALC) (JCF), 2014 WL 1285496 (S.D.N.Y. Mar. 31, 2014).............. 14

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
No. C10-861 RSM, 2014 WL 202102 (W.D. Wash. Jan. 17, 2014) ................... 11

*CE In'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*,
No. 12-CV-08087 (CM) (SN), 2013 WL 2661037 (S.D.N.Y. June 12, 2013).......... 11

*Cohn v. Taco Bell Corp.*,
No. 92 C 5852, 1993 WL 451463 (N.D. Ill. Nov. 1, 1993)........................... 10

*Craft v. Chopra*,
907 P.2d 1109 (Ct. App. Okla. 1995) .............................................. 8

**Page(s)**

*Cromeens, Holloman, Sibert, Inc v. AB Volvo*,
349 F.3d 376 (7th Cir. 2003) .................................................. 7

*Estate of Klieman v. Palestinian Auth.*,
293 F.R.D. 235 (D.D.C. 2013) ................................................ 10

*GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*,
64 F. Supp. 3d 1179 (N.D. Ill. 2014) ...................................... 5

*Graham v. Gen. U.S. Grant Post No. 2665, V.F.W.*,
43 Ill.2d 1, 248 N.E.2d 657 (1969) .......................................... 7-8

*Gucci Am., Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014) ..................................................... 4, 5, 6

*Herbert v. Lando*,
441 U.S. 153 (1979) ................................................................ 3

*In re Activision Blizzard, Inc.*,
86 A.3d 531 (Del. Ch. 2014) ................................................... 14

*In re Estate of Marcos Human Rights Litig.*,
No. 97 C 0477, 1997 WL 428544 (N.D. Ill. July 24, 1997) ............ 8, 13

*In re Marriage of Kosmond*,
830 N.E.2d 596 (Ill. App. Ct. 2005) ........................................ 8

*In re Perrier Bottled Water Litig.*,
138 F.R.D. 348 (D. Conn. 1991) ............................................... 7, 13, 14

*In re Sealed Case*,
141 F.3d 337 (D.C. Cir. 1998) ................................................. 4

*Ings v. Ferguson*,
282 F.2d 149 (2d Cir.1960) ...................................................... 7, 14

*Intercontinental Credit Corp. v. Roth*,
595 N.Y.S.2d 602 (Sup. Ct. N.Y. Cty. 1991) ........................... 11-12

*Kipp v. Ski Enter. Corp. of Wisconsin, Inc.*,
783 F.3d 695 (7th Cir. 2015) ................................................... 4-5

*Kolcraft Enters., Inc. v. Artsana USA, Inc.*,
No. 13-4863, 2014 WL 3865814 (N.D. Ill. Aug. 6, 2014) ............ 5

*Linde v. Arab Bank, PLC*,
262 F.R.D. 136 (E.D.N.Y. 2009) ............................................. 13

iii

**Page(s)**

*MeadWestvaco Corp. v. Rexam PLC*,
No. 1:10CV511, 2010 WL 5574325 (E.D. Va. Dec. 14, 2010)..........................................13

*Minpeco, S.A. v. Conticommodity Servs., Inc.*,
118 F.R.D. 331 (S.D.N.Y.1988) ..........................................14

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)..........................................7

*Motorola Credit Corp. v. Standard Chartered Bank*,
24 N.Y.3d 149 (2014) ..........................................8

*Motorola Credit Corp. v. Uzan*,
No. 02 Civ. 666 (JSR), 2015 WL 5613077 (S.D.N.Y. Sept. 9, 2015)..............................5

*Our Lady of Bellefonte Hosp. v. Ashland GI Servs., LLC*,
No. 11 C 6833, 2012 WL 787199 (N.D. Ill. Mar. 9, 2012) ..........................................4

*Parker v. Four Seasons Hotels, Ltd.*,
291 F.R.D. 181 (N.D. Ill. 2013)..........................................9

*Patterson v. Avery Dennison Corp.*,
281 F.3d 676 (7th Cir. 2002) ..........................................4

*Ransom v. A.B. Dick Co.*,
289 Ill. App. 3d 663, 682 N.E.2d 314 (1st Dist. 1997)..........................................11

*Reinsurance Co. of Am., Inc. v. Administratia Asigurarilor de Stat
(Admin. of State Ins.)*,
902 F.2d 1275 (7th Cir. 1990) ..........................................4, 11, 12, 14

*Republic of Argentina v. NML Capital, Ltd.*,
134 S. Ct. 2250 (2014)..........................................12

*Robinson v. Stanley*,
No. 06 C 5158, 2010 WL 1005736 (N.D. Ill. Mar. 17, 2010) ..........................................9

*Rubin v. Islamic Republic of Iran*,
637 F.3d 783 (7th Cir. 2011) ..........................................9

*S.E.C. v. Stanford Int'l Bank, Ltd.*,
776 F. Supp. 2d 323 (N.D. Tex. 2011) ..........................................11

*Société Nationale Industrielle Aérospatial v. U.S. Dist. Court
for S. Dist. of Iowa*,
482 U.S. 522 (1987)..........................................12

iv

**Page(s)**

*Textile Banking Co., Inc. v. Rentschler*,
657 F.2d 844 (7th Cir. 1981) ............................................................................ 10

*Tiffany (NJ) LLC v. Qi Andrew*,
276 F.R.D. 143 (S.D.N.Y. 2011) ................................................................. 13, 14

*Tulip Computers Int'l B.V. v. Dell Computer Corp.*,
254 F. Supp. 2d 469 (D. Del. 2003) ................................................................... 11

*Walden v. Fiore*,
134 S. Ct. 1115 (2014) ........................................................................................ 6

**Other Authorities**

Legal Information – BNPP (2013), http://www.bnpparibas.com/en/legal-information ..... 3

C-362/14, *Maximillian Schrems v. Data Prot. Comm'r*, 2015 E.C.R. I-1 ......................... 15

Non-parties BNP Paribas, Chicago Branch ("BNPP-CH") and BNP Paribas ("BNPP") respectfully submit this memorandum in support of their motion to quash the document subpoena and citation to discover assets served on BNPP-CH on August 24, 2015, and the deposition subpoena (along with the document subpoena, the "Subpoenas") served on BNPP-CH on October 21, 2015.[1]

## PRELIMINARY STATEMENT

This matter concerns Subpoenas and a citation to discover assets served by plaintiffs on BNPP-CH seeking to identify Iranian assets plaintiffs might use to satisfy their judgment against Iran. BNPP-CH searched for Iranian assets and found none. But plaintiffs demand that BNPP, a French bank, headquartered in Paris, France, now conduct a search of thousands of bank branches worldwide. That demand, however, is foreclosed by the Supreme Court's decision in *Daimler AG v. Bauman*, which fundamentally altered the test for general jurisdiction, finding that such jurisdiction is appropriate only over corporations "at home" in the jurisdiction. As BNPP is not "at home" in Illinois and not subject to general jurisdiction here, plaintiffs' demand that BNPP search for and produce documents from anywhere in the world must be rejected. This conclusion is not changed by the existence in Illinois of a single BNPP branch—BNPP-CH— which, among the thousands of BNPP branches worldwide, is the sole BNPP branch located in this state. Nor is there a basis for specific jurisdiction over BNPP, given that plaintiffs' claims have no connection to BNPP's contacts with Illinois.

The Subpoenas and citation should also be quashed to the extent that plaintiffs seek to apply them extraterritorially. The Illinois judgment enforcement statute does not provide for extraterritorial application and any efforts to extend its reach are barred by Illinois rules of

---

[1] Submitted with this memorandum are the declarations dated Oct. 29, 2015, of Stephen Christie ("Christie Decl."), and of Diego A. Zambrano ("Zambrano Decl."). The Zambrano Declaration attaches cited exhibits.

statutory construction, as well as by the separate entity rule, which dictates that domestic bank branches are not responsible for information in foreign branches. The Foreign Sovereign Immunities Act ("FSIA") also renders immune from execution Iranian assets outside of the U.S.

Further, basic principles of relevance and burden require quashing the Subpoenas and citation. Plaintiffs fail to demonstrate how their broad information demands are relevant to identifying the narrow category of Iranian assets, if they exist, potentially subject to execution. BNPP-CH does not have access to documents at branches located outside the U.S., and BNPP should not be forced to bear the burden of a "worldwide" search or to assume the risk of criminal and civil liability under the laws of France and other jurisdictions where it operates. This result is fair: the Hague Convention can assist plaintiffs in discovering the information they seek, to the extent it exists.

## FACTS

On February 11, 2011 and March 31, 2014, plaintiffs obtained default judgments against Iran and the Iranian Ministry of Information and Security (together, "Iran") totaling $67 million on claims related to terrorist attacks that took place in 2003. (Dkt. Nos. 73, 107).

On August 24, 2015, plaintiffs purported to serve a subpoena for documents, dated August 21, 2015 on non-parties BNPP and BNPP-CH. Christie Decl. ¶ 6; Ex. A (Document Subpoena). The Subpoenas and related citation to discover assets (Ex. B) requested documents and testimony from BNPP related to accounts in the name of Iran and Iranian entities. In a cover letter, plaintiffs asserted that their discovery requests extended to "documents and information located in any BNP branch anywhere in the world." Ex. C (Letter from Robert J. Tolchin). A second subpoena, Ex. H (Deposition Subpoena), was served on BNPP-CH on October 21, 2015, seeking a deposition concerning Iranian assets worldwide.

2

While the Subpoenas and Citation name "BNP Paribas," plaintiffs did not effect service on BNPP's main office in Paris, France, but instead delivered the Subpoenas and Citation to BNPP-CH in Chicago. Christie Decl. ¶ 6. BNPP-CH is a branch of BNPP, a publicly-traded French entity registered and organized in France, with its headquarters in Paris, France.[2] The BNPP group includes 6,800 branches located in 75 countries. Ex. R (2013 BNPP Annual Report) at 1, 16. BNPP-CH is the only BNPP branch in Illinois and one of three branches in the U.S. Christie Decl. ¶ 3. BNPP-CH has no ability to obtain current account records located at the BNPP head office, or at other BNPP branches or affiliates, and there is no centralized database of account information shared by BNPP-CH, its parent, affiliates, subsidiaries, and its and their branches. *Id.* ¶ 5.

BNPP-CH timely served objections to the Document Subpoena and Citation on September 8, Ex. D, and to the Deposition Subpoena on October 28, 2015, Ex. J. BNPP-CH complied by searching its records, but found no responsive information or Iranian property. Christie Decl. ¶ 7.[3] Counsel conferred to discuss the reach of the Subpoenas and Citation, but plaintiffs demanded a global search of Iranian assets. Following the inability of plaintiffs and BBNP-CH to come to an agreement on the reach of the Subpoenas and Citation, non-parties BNPP-CH and BNPP bring this motion to quash. Zambrano Decl. ¶¶ 3-7.

## ARGUMENT

This Court "should not neglect [its] power to restrict discovery . . . . [and] exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979)

---

[2]   Ex. R (2013 BNPP Annual Report) at 81, 85; *see* Legal Information – BNPP (2013) http://www.bnpparibas.com/en/legal-information.

[3]   In the spirit of cooperation, BNP Paribas, New York Branch coordinated a search for blocked assets of Iran in the U.S. with the BNP Paribas San Francisco Branch, the BNP Paribas Miami Agency, the BNP Paribas Houston Agency, and the BNP Paribas Representative Office in Dallas. Ex. E (Letter from C. Boccuzzi).

(citation omitted). Discovery should be limited where "the burden or expense . . . outweighs its likely benefit," Fed. R. Civ. P. 26(b)(2)(C)(iii), where the information sought is not relevant to a party's claims, *see* Fed. R. Civ. P. 26(b)(1), or where the requested discovery "subjects a person to undue burden," Fed. R. Civ. P. 45(d)(3)(A)(iv). Motions to quash are entrusted to the discretion of the court. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

## I.     THE SUBPOENAS AND CITATION SHOULD BE QUASHED AS THERE IS NO PERSONAL JURISDICTION OVER BNPP

In order to exercise its discovery power in this case, this Court must have personal jurisdiction over non-party BNPP. *See, e.g.*, *Reinsurance Co. of Am., Inc. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, 902 F.2d 1275, 1281 (7th Cir. 1990) ("'A court . . . may order a person subject to its jurisdiction to produce documents.'") (quoting Restatement (Third) of Foreign Relations Law § 442 (1987)); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014) ("A district court, however, must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45."). It is "elementary" that "courts lacking jurisdiction over litigants cannot adjudicate their rights." *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998). This rule applies to Illinois citations as well as subpoenas. *Our Lady of Bellefonte Hosp. v. Ashland GI Servs., LLC*, No. 11 C 6833, 2012 WL 787199, at *3 (N.D. Ill. Mar. 9, 2012) ("[party] is subject to a citation from this court only if the court has personal jurisdiction over it").

General jurisdiction after *Daimler AG v. Bauman* is appropriate over a foreign corporation only when that corporation is "at home" in the forum State. 134 S. Ct. 746, 754-63 (2014). BNPP, a French bank registered and organized in France, with its principal place of business there, is not at home in Illinois. *Daimler* identified the place of incorporation and principal place of business as the "paradigm[atic] . . . bases for general jurisdiction" because they

4

"have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* at 760 (internal citations and quotation marks omitted); *Kipp v. Ski Enter. Corp. of Wisconsin, Inc.*, 783 F.3d 695, 698 (7th Cir. 2015) (finding no general jurisdiction where defendant corporation was not incorporated under the laws of, and did not have its principal place of business in, Illinois). In *Hill v. Capital One Bank (USA), N.A.*, this Court applied *Daimler* and found no general jurisdiction over a bank with few Illinois contacts, holding that Capital One Bank was not "at home" in this state because Illinois was not its state of incorporation or principal place of business. No. 14-CV-6236, 2015 WL 468878, at *7 (N.D. Ill. Feb. 3, 2015). The Court explained that its holding was supported by both *Daimler* and the Second Circuit's decision in *Gucci America, Inc. v. Weixing Li* where the court applied "*Daimler* . . . holding that general jurisdiction did not exist over a bank with branch offices in the New York forum, but incorporated and headquartered outside of New York." *Id.*; *see also GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*, 64 F. Supp. 3d 1179, 1191 (N.D. Ill. 2014) (finding no jurisdiction over foreign parent based on local subsidiary because the company had "not . . . in any way adopted this state as a . . . de facto, or temporary home").

Where, as here, BNPP is not "at home" in Illinois, the Court lacks general jurisdiction. *See Kipp*, 783 F.3d at 698; *Gucci*, 768 F.3d at 135; *Kolcraft Enters., Inc. v. Artsana USA, Inc.*, No. 13-4863, 2014 WL 3865814, at *3 (N.D. Ill. Aug. 6, 2014) (finding no personal jurisdiction over foreign parent of domestic company); *Motorola Credit Corp. v. Uzan*, No. 02 Civ. 666 (JSR), 2015 WL 5613077, at *2 (S.D.N.Y. Sept. 9, 2015) (finding no general jurisdiction over non-party banks incorporated and headquartered abroad).[4] The existence of a single branch in

---

[4]    To the extent plaintiffs seek to rely on *Gates v. Syrian Arab Republic*, as they indicated in prior correspondence, that case is inapposite because it (1) preceded *Daimler*, (2) involved a party that did not challenge personal jurisdiction (and was found to have waived that defense), and (3) involved

Illinois, BNPP-CH, among thousands worldwide, *see* Christie Decl. ¶ 3,[5] does not change this analysis, *see Gucci*, 768 F.3d at 135 ("Just like the defendant in *Daimler*, the nonparty Bank here has branch offices in the forum, but is incorporated and headquartered elsewhere.").

Nor can plaintiffs assert a basis for specific jurisdiction over BNPP. Plaintiffs explicitly demand a search for purported assets with no connection to this State, *see* Ex. C (Letter from R. Tolchin) (demanding documents from "any BNP branch anywhere in the world"), and so their "claims" by definition are not based on BNPP "'purposefully direct[ing]' [its] activities at the state . . . [and] the injury . . . arise[ing] from [those] activities." *Hill*, 2015 WL 468878, at *8. For specific jurisdiction, "not just any contacts will do: 'For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State.'" *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). No "suit-related" conduct of BNPP is at issue here, and thus there is no basis for specific jurisdiction over the bank. Given the lack of connection to Illinois, and the availability to plaintiffs of other means of obtaining the information, the assertion of jurisdiction over BNPP does not comport with the Constitutional requirement of "fair play and substantial justice." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-23 (2014).

Finally, international comity concerns support quashing the Subpoenas and Citation. The "risks to international comity [of an] expansive view of general jurisdiction," *Daimler*, 134 S. Ct. at 763, are precisely the type presented in this case, where BNPP is being asked to search for information with no regard for the sovereignty of other countries or the unfairness to BNPP, which risks criminal and civil liability if it acts contrary to the bank secrecy and privacy laws of

---

documents located in New York. No. 11 C 8715, 2013 WL 1337214, at *3 (N.D. Ill. Mar. 29, 2013). The court in *Gates* expressly limited its decision to *domestic* U.S. branches. *Id.* at *3 n.2.

[5] BNPP-CH employs less than fifty individuals, less than 0.03% of BNPP's global workforce. Christie Decl. ¶ 4.

its home jurisdiction and other jurisdictions in which it operates. *See infra* at pp. 14-15; *see also* Ex. S (Blossom Decl. ¶ 7); Ex. T (Conac Decl. ¶¶ 9-11). The Supreme Court has noted that "[o]ther nations do not share the uninhibited approach to personal jurisdiction" that some U.S. courts had advanced prior to *Daimler*. *Daimler*, 134 S. Ct. at 763; *see also In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 355 (D. Conn. 1991) (noting "France has been among the most emphatic" in disfavoring use of Federal Rules over Hague Convention). As a matter of comity, the assertion of jurisdiction over BNPP here is inappropriate after *Daimler*. *See Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333, 1340 (N.D. Ill. 1996) ("In accord with the principle of comity between sovereign nations, a district court should decline to exercise jurisdiction under certain circumstances in deference to the laws and interests of another foreign country."), *aff'd*, 132 F.3d 36 (7th Cir. 1997); *Ings v. Ferguson*, 282 F.2d 149, 152 (2d Cir.1960) ("Upon fundamental principles of international comity, our courts dedicated to the enforcement of our laws should not take such action as may cause a violation of the laws of a friendly neighbor.").

## II.    THE SUBPOENAS AND CITATION DO NOT APPLY EXTRATERRITORIALLY

The Citation should be quashed because plaintiffs seek impermissibly to apply to foreign entities and documents an Illinois statute that has no extraterritorial reach. Illinois embraces the "long-standing rule of construction . . . which holds that a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-85, 835 N.E.2d 801, 852-53 (2005) (Illinois statute did not apply outside of Illinois) (quotation marks omitted); *see also Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010). Plaintiffs served the Citation pursuant to Rule 1402 of the Illinois Code of Civil Procedure, a provision that gives no indication of extraterritorial effect. 735 ILCS 5/2-1402. Therefore, to the extent plaintiffs seek information located abroad, if such information exists, they cannot do so under Rule 1402. *See Cromeens, Holloman, Sibert, Inc. v.*

*AB Volvo*, 349 F.3d 376, 386 (7th Cir. 2003) (Illinois statute did not apply extraterritorially);

*Graham v. Gen. U.S. Grant Post No. 2665*, *V.F.W.*, 43 Ill.2d 1, 7, 248 N.E.2d 657, 660-61

(1969) (same); *accord Craft v. Chopra*, 907 P.2d 1109, 1112 (Ct. App. Okla. 1995) (finding "no

statutory authority in . . . the Oklahoma Discovery Code contemplating extra-territorial effect of

Oklahoma discovery process"); Ex. U (Order, *Stansell v. Revolutionary Armed Forces of

Colombia (FARC)*, No. 09-cv-2308 (M.D. Fla. July 22, 2015) (Florida garnishment statute does

not apply extraterritorially)).

The purported extraterritorial reach of the Subpoenas and Citation are also improper

under the separate entity rule, which instructs that BNPP-CH has no responsibility for accounts

located in foreign branches. *See In re Estate of Marcos Human Rights Litig.*, No. 97 C 0477,

1997 WL 428544, at *4 (N.D. Ill. July 24, 1997) (predicting that Illinois Supreme Court would

uphold separate entity rule in case involving Chicago bank branch that had no access to

information in foreign branches); *accord Motorola Credit Corp. v. Standard Chartered Bank*, 24

N.Y.3d 149, 156, 162 (2014) (reaffirming separate entity rule, noting "courts have continued to

recognize the practical constraints and costs associated with conducting a worldwide search for a

judgment debtor's assets").[6]

The FSIA, the sole basis for jurisdiction over foreign nations in U.S. courts, provides a

further basis to vacate plaintiffs' Citation to the extent it purports to restrain alleged Iranian

assets outside of the U.S. 28 U.S.C. § 1610; *see also Autotech Techs. LP v. Integral Research &*

---

[6]     While the Illinois Supreme Court has never decided the issue, the New York Court of Appeals
recently reaffirmed the continuing importance of the separate entity rule in a well-reasoned opinion.
*Motorola Credit Corp. v. Standard Chartered Bank*, 24 N.Y.3d 149, 157 (2014). Although one
Illinois appellate court has suggested that Illinois may not follow the separate entity rule, *see In re
Marriage of Kosmond*, 830 N.E.2d 596, 601 (Ill. App. Ct. 2005), that suggestion was made in a
different context, involving a pre-judgment marriage dissolution claim seeking assets in one specific
German branch, and did not contemplate the ramifications of an overbroad "worldwide" search, such
as the one demanded here. Indeed, even in *Kosmond*, the court remanded the issue of foreign
discovery to the trial court, ordering it to consider principles of international comity. *Id.*

*Dev. Corp.*, 499 F.3d 737, 750 (7th Cir. 2007); *Argentina v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989). Only property of a foreign state that is both located in the U.S. and used for a commercial activity here may be subject to execution, *see* 28 U.S.C. § 1610(a); all other property is categorically immune from restraint under the FSIA. *Autotech*, 499 F.3d at 750. Iranian assets located outside of the U.S. fail to meet these requirements. And plaintiffs otherwise fail to identify the specific property they seek to restrain and establish that it may be executed on under Section 1610. *See Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 796 (7th Cir. 2011) ("plaintiff[s] must identify the particular foreign-state property he seeks to attach").

**III.    THE SUBPOENAS FLOUT THE BASIC STANDARDS FOR POST-JUDGMENT DISCOVERY UNDER FEDERAL RULES 26 AND 69 AS THEY IMPOSE AN UNDUE BURDEN AND SEEK IRRELEVANT INFORMATION**

Plaintiffs' Subpoenas are not "reasonably calculated" to lead to the production of information about property subject to execution, and should be quashed especially where, as here, the lack of any showing of relevance is coupled with the burden plaintiffs seek to impose on BNPP. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii), 45(d)(3)(A)(iv). Courts routinely prohibit asset discovery that fails to include reasonable limitations, including geographical restrictions, as overly broad. *See, e.g.*, *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 189 (N.D. Ill. 2013) (quashing non-party subpoena because "it seeks irrelevant information and would clearly subject [the non-party] to an undue burden"). Concerns with scope are particularly salient where the subpoena involves a non-party, as "it has been consistently held that 'non-party' status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue . . . while parties must accept the burdens of litigation, non-parties have different expectations." *Id.* at 188; *see also Robinson v. Stanley*, No. 06 C 5158, 2010 WL 1005736, at *3 (N.D. Ill. Mar. 17, 2010) ("It is one thing to subject *parties* to the trials and tribulations of discovery . . . but [a non-party] doesn't have a horse in [the] race.") (emphasis in original).

9

Here, plaintiffs have made no showing that their broad demands are relevant to the narrow category of assets potentially subject to seizure by plaintiffs—namely Iranian commercial assets—and that failing alone demonstrates that the Subpoenas fail to meet the requirements of Rules 26 or 69. *See* Fed. R. Civ. P. 26(b)(2)(C); 69(a)(2). The burden imposed is especially high where, as here, plaintiffs request non-parties such as BNPP-CH to search documents that it cannot access, and BNPP-CH has no means by which to search the globe for alleged Iranian property at other BNPP branches (of which there are over 6,800). Ex. A (Document Subpoena). The risks inherent in potential violations of a host of bank secrecy and other foreign laws to which BNPP is subject, *see infra* at 14-15, are significant.

As set out in BNPP-CH's responses and objections, Ex. D, and confirmed in the Christie Declaration, ¶¶ 5-7, BNPP-CH lacks information concerning alleged Iranian assets outside of the U.S., and so plaintiffs have no basis to demand a deposition. *Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1993 WL 451463, at *5 (N.D. Ill. Nov. 1, 1993) (granting motion to quash where "any information received would be cumulative to that [already] gained"); *see also Textile Banking Co., Inc. v. Rentschler*, 657 F.2d 844, 851 (7th Cir. 1981) (noting appearance in person exists "for the convenience of the parties"). Further, plaintiffs cannot seek to depose a BNPP official because this court lacks personal jurisdiction over BNPP, *see supra* Part I, and such a request violates Rule 45's limitation on depositions to within 100 miles of BNPP's place of business. *See Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 239 (D.D.C. 2013) ("[U]nder Rule 45 this Court must quash a subpoena where a nonparty organization does not employ anyone who is suitable to serve as a Rule 30(b)(6) representative within 100 miles of the district.").

## IV.   PLAINTIFFS SHOULD USE THE HAGUE CONVENTION OR THE PROCEDURES AVAILABLE IN RELEVANT FOREIGN JURISDICTIONS

Illinois courts recognize that principles of international comity compel courts to consider and defer to foreign law where appropriate. *Ransom v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 670, 682 N.E.2d 314, 320 (1st Dist. 1997). Even were jurisdiction found to exist over BNPP, principles of international comity and sovereignty weigh in favor of proceeding through the Hague Convention. *Cf. Reinsurance Co. of Am.*, 902 F.2d at 1279-80 (affirming denial of motion to compel post-judgment discovery based on concerns with Romanian law).

The Hague Convention is a treaty designed precisely to accommodate comity concerns with international discovery, allowing parties to request extraterritorial discovery with the aid of foreign governments. *See* The Hague Convention, Mar. 18, 1970, 23 U.S.T. 2555, TIAS No. 7444 (codified at 28 U.S.C. § 1781). Courts around the country have emphasized that the Hague Convention is particularly applicable in cases dealing with non-parties because of heightened comity concerns. *See, e.g.*, *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM, 2014 WL 202102, at *2 (W.D. Wash. Jan. 17, 2014) ("Use of Hague Convention procedures is particularly relevant where, as here, discovery is sought from a non-party in a foreign jurisdiction."); *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003) (Hague Convention appropriate where subpoenaed parties "are not parties to the lawsuit, have not voluntarily subjected themselves to discovery, are [foreign citizens], and are not otherwise subject to the jurisdiction of the Court"); *S.E.C. v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 341 (N.D. Tex. 2011) (ordering discovery of foreign non-party through the Hague Convention); *CE In'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, No. 12-CV-08087 (CM) (SN), 2013 WL 2661037, at *14 (S.D.N.Y. June 12, 2013) ("'An order compelling production should be imposed on a nonparty . . . only in extreme circumstances.'"); *Intercontinental Credit*

11

*Corp. v. Roth*, 595 N.Y.S.2d 602 (Sup. Ct. N.Y. Cty. 1991) (Hague Convention is "virtually compulsory" where disclosure is sought from foreign non-parties).

Here, the factors identified by courts to determine whether comity compels the use of the Hague Convention all weigh in favor of requiring plaintiffs to proceed through the Hague Convention. *See Société Nationale Industrielle Aérospatial v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 543 n.28, 544 (1987). The factors include: (1) "the importance to the investigation or litigation of the documents or other information requested," (2) "the degree of specificity of the request," (3) "whether the information originated in the United States," (4) "the availability of alternative means of securing the information," and (5) the competing national interests of the United States and the country where the information is located. *See id.*; *Reinsurance Co. of Am.*, 902 F.2d at 1279-80 (citations omitted).

**Importance to litigation.** While information concerning Iranian assets potentially subject to execution is the focus of plaintiffs' discovery efforts, plaintiffs have not demonstrated that BNPP has such information, particularly given the execution limitations imposed by the FSIA to assets in the United States.[7] *See* 28 U.S.C. § 1610. Like the U.S. FSIA, French law protects as immune from execution non-commercial Iranian assets. *See e.g.*, Ex. M-N (Cour de Cassation [Cass.][French Supreme Court], 1e, Jan. 25, 2005, no. 03-18.176) (stating principle that foreign state property is immune from execution except when it is "connected, not to the exercise of a sovereign activity, but to an economic, commercial or civil transaction governed by

---

[7]    Based on discussions with plaintiffs' counsel, plaintiffs may invoke the Supreme Court's decision in *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014). Such reliance is misguided. *NML* decided the "narrow question" of whether the FSIA provides foreign states with "immunity" from discovery. *Id.* at 2255. The case did not consider or apply the multi-factor comity test at issue here, and whether a party could disregard the Hague Convention where, as here, the party had failed to make a plausible showing that a third party had documents of true importance to the litigation. The Supreme Court in *NML* noted that "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place." *Id.* at 2257.

12

private law which gives rise to the legal action"); Ex. O-P (Code Des Procédures Civiles

D'exécution, Art. L111-1 (Fr.)) ("Enforcement and provisional measures do not apply to persons

benefitting from an immunity from execution."). Even apart from the limitations imposed by the

FSIA and French law, application of the separate entity rule precludes a plaintiff from seeking to

restrain or seize an asset at one bank branch through process on another. *In re Estate of Marcos*

*Human Rights Litig.*, 1997 WL 428544, at *4 (N.D. Ill. July 24, 1997) (applying separate entity

rule to Chicago branch of a foreign bank).

     **Foreign origin of the documents**. Plaintiffs recognize the lack of responsive information

in the U.S. and are demanding documents that are located and originated overseas. Ex. C (Letter

from Robert J. Tolchin) (demanding information "located in any BNP branch anywhere in the

world"). This weighs heavily in favor of plaintiffs proceeding under the Hague Convention. *See*

*Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 150 (E.D.N.Y. 2009).

     **The degree of specificity of the request.** Given its purported worldwide scope, the

Subpoenas cannot be said to be "narrowly tailored" nor "designed solely to target discreet . . .

information." *See In re Perrier*, 138 F.R.D. at 355 (plaintiff must employ Hague Convention

procedures in pursuing discovery from French defendant); *MeadWestvaco Corp. v. Rexam PLC*,

No. 1:10CV511 (GBL/TRJ), 2010 WL 5574325, at *1 (E.D. Va. Dec. 14, 2010) (noting "courts

have found the determinative factors [regarding this element] whether the discovery requests are

excessive and whether the party seeking discovery is willing to narrow the[ir] scope").

     **Alternative means of retrieval**. Plaintiffs have available alternative means of retrieval

apart from the Subpoenas, namely through the Hague Convention. *See Tiffany (NJ) LLC v. Qi*

*Andrew*, 276 F.R.D. 143, 152-56 (S.D.N.Y. 2011) (finding availability of Hague Convention

procedures weighed against enforcement of subpoena). Use of the Hague Convention would also

avoid the potential hardship of placing BNPP in the untenable position of having to choose between complying with this Court's order and violating other countries' civil and criminal laws. *Cf. Reinsurance Co. of Am.*, 902 F.2d at 1279-80 (refusing to require production of documents in Romania given Romanian secrecy laws).

**Competing national interests.** The status of BNPP and BNPP-CH as nonparties to the litigation "attenuate[s] the United States interest in enforcing discovery obligations." *Qi Andrew*, 276 F.R.D. at 157; *see also Ings v. Ferguson*, 282 F.2d 149, 152; *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 118 F.R.D. 331, 333-34 (S.D.N.Y.1988). Moreover, the U.S. interest in this case is even more attenuated because plaintiffs are private civil litigants, not an enforcement agency or criminal prosecutor.

On the other hand, France, where BNPP is headquartered, has emphasized that resort to the Hague Convention is the only appropriate way for U.S. litigants to obtain discovery from France. *See, e.g.*, *In re Perrier Bottled Water Litig.*, 138 F.R.D. at 355; *see also* Ex. K (Cutajar Decl.); *Blagman v. Apple, Inc.*, 12 Civ. 5453 (ALC) (JCF), 2014 WL 1285496, at *4 (S.D.N.Y. Mar. 31, 2014) (issuing letters rogatory for documents in France through the Hague Convention); Ex. L at 3-4 (French Blocking Statute, Law no. 80-538 of July 16, 1980) (providing for criminal sanctions, including prison). French law prohibits the production of documents in France for use in civil discovery elsewhere, except when the documents are requested in compliance with an international convention or procedures set forth under French law. *See In re Activision Blizzard, Inc.*, 86 A.3d 531, 535-39 (Del. Ch. 2014) (ordering discovery of French company to proceed in part through the Hague Convention). The French Data Protection Act imposes criminal penalties, including imprisonment and substantial fines, and has been enforced "at least a dozen" times since 2006. *Id.* at 538 ("first violation . . . is punishable by criminal sanctions . . . and

14

imprisonment of up to five years"). Less than three weeks ago, the Court of Justice of the European Union ruled that companies based in Europe cannot transfer customer data to the United States. C-362/14, *Maximillian Schrems v. Data Prot. Comm'r*, 2015 E.C.R. I-1.

An order requiring BNPP to comply with the Subpoenas and Citation would improperly subject BNPP to the real risk of violating these French laws and the laws of other countries. In *In re Fairfield Sentry Ltd.*, the court denied a motion for an order directing foreign bank defendants (including several BNPP entities) to make limited expedited initial disclosures. Ex. Q (No. 10-13164 (BRL), Bench Ruling (S.D.N.Y. July 19, 2012)). In denying the disclosures, the court noted that the requests implicated "significant bank customer confidentiality laws of no fewer than 30 countries, attested to by numerous declarations of foreign law experts." *Id.* at 2. The disclosure request implicated 22 jurisdictions where BNPP branches, subsidiaries, or affiliates are located, highlighting the comity concerns here as well. Conducting extraterritorial discovery under the Hague Convention is therefore imperative here.

## CONCLUSION

The Court should grant the motion of BNPP-CH and BNPP to quash the Subpoenas and Citation.

Dated: October 29, 2015                                   Respectfully submitted,

                                                          NON-PARTIES BNP PARIBAS AND BNP
                                                          PARIBAS, CHICAGO BRANCH

                                                          By: _____/s/ Brendan J. Healey_____

Brendan J. Healey (ARDC #6243091)
MANDELL MENKES LLC
One North Franklin, Suite 3600
Chicago, Illinois 60606
Telephone: (312) 251-1000

Carmine D. Boccuzzi (*pro hac vice* pending)
Diego A. Zambrano (*pro hac vice* pending)