# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SHLOMO LEIBOVITCH, et al.,

        Plaintiffs,

                                        Civ. No. 08-cv-01939

    v.

THE SYRIAN ARAB REPUBLIC, et al.,

        Defendants.

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO COMPEL COMPLIANCE WITH
## <u>SUBPOENAS AND CITATION TO DISCOVER ASSETS</u>

In support of their Motion to Compel Compliance with Rule 45 Subpoenas and Citation to Discover Assets, Plaintiffs respectfully submit this Memorandum of Law and state as follows:

### <u>Introduction and Background</u>

This is a judgment enforcement proceeding by plaintiffs, who are seeking to identify and attach property of the Judgment Debtors the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS") to satisfy their judgments totaling $67,000,000. Plaintiffs are the victims of a terrorist shooting attack carried out by the Palestine Islamic Jihad terrorist organization with material support from the Judgment Debtors. As a result of the attack, 7 year old Noam Leibovitch was killed, 3 year old Shira Leibovitch suffered severe physical injury and the remaining plaintiffs, the parents, grandparents and siblings of Noam and Shira Leibovitch, suffered severe psychological and emotional injuries.

Plaintiffs brought suit and obtained their judgments from this court pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A. DE 73 and DE 104. These judgments were served on defendants Iran and MOIS pursuant to FSIA §1608(a)(4) on April 19, 2015. [DE 113]. By order dated August 17, 2015, this Court found that a reasonable time has passed within the meaning of 28 U.S.C. § 1610 (c) and authorized plaintiffs to commence judgment enforcement proceedings.

On August 24, 2015, plaintiffs initiated supplementary proceedings in aid of judgment enforcement against Bank of Tokyo-Mitsubishi UFJ ("BTMU") in this Court pursuant to Federal Rule of Civil Procedure 69 and Illinois law. [DE 128]. Declaration of Robert J. Tolchin ("Tolchin Decl.) at ¶¶ 2-4. BTMU is a Japanese bank headquartered in Tokyo, Japan with a physical presence in 12 U.S. States, including three bank branches (one in Chicago) and nine other offices. Ex. H to Tolchin Decl. BTMU's operations in the United States are significant, representing approximately 15%-19% of BTMU's gross profits in 2014 and aiming to become one of the top ten U.S. banks. Exs. I-K to Tolchin Decl. BTMU's Chicago branch is registered as a Foreign Bank Office with the Illinois Division of Banking. Ex. F to Tolchin Decl.

Plaintiffs served BTMU at its Chicago branch with a Citation to Discover Assets (the "Citation") pursuant to 735 ILCS § 5/2-1402 and Illinois Supreme Court Rule 277 with regard to certain financial accounts maintained by it. Ex. A and D to Tolchin Decl. Plaintiffs also served BTMU with a Federal Rule 45 Subpoena seeking production of documents related to such accounts. Ex. B and C to Tolchin Decl.

Both the Citation and the Subpoena specified that they concerned accounts belonging to the judgment debtors, and any agency or instrumentality of the judgment debtors, including the Central Bank of Iran, the Naftiran Intertrade Company, the National Iranian Oil Company and

the National Iranian Tanker Company, defined as "Iranian Accounts". Plaintiffs explained in a cover letter that they were seeking information and production of documents about the Iranian Accounts within the possession, custody or control of BTMU, including at branches outside the United States. Tolchin Decl. ¶ 4.

The purpose of the Citation and the Subpoena is to enable plaintiffs to discover information about assets of the judgment debtors against which they can enforce their judgments, either in the United States or elsewhere. The Rule 45 Subpoena contained 11 document requests seeking basic bank account documents in BTMU's possession, custody or control, including documents that would inform plaintiffs as to the balances in the accounts (Request 4), the beneficiaries and signatories on the accounts (Requests 2-3), transaction histories for the accounts, including the identities of the recipients, beneficiaries, intermediaries and counterparties involved in such transfers (Request 7), information about whether the accounts are blocked pursuant to Office of Foreign Asset Control ("OFAC") regulations (Request 11), OFAC licenses relating to the accounts (Request 10) and correspondence between the banks and the judgment debtors (Request 10) and the banks and OFAC relating to the accounts (Request 9). Ex. B to the Tolchin Decl.

The Citation contained three interrogatories also seeking basic information about the accounts maintained by BTMU. Ex. A to the Tolchin Decl. Pursuant to Illinois Supreme Court Rule 277(c)(3), the Citation required BTMU to produce a designated corporate officer to testify about the aforementioned assets before the Court on September 9, 2015. BTMU did not designate a corporate officer to appear at the hearing and instead requested an extension of time to respond to October 9, 2015. As a courtesy, plaintiffs' counsel agreed. The Citation hearing was adjourned to December 9, 2015.

BTMU unilaterally limited its Responses and Objections, served on October 9, 2015, to its Chicago Branch, claiming that the Court lacks personal jurisdiction over BTMU. BTMU also objected to almost every definition and term in the Citation and Subpoena, including common banking terms like "current account balance," "currency", "beneficiaries," "transfers," and "intermediaries," among others. Ex D to Tolchin Decl.

In light of BTMU's refusal to undertake a search for responsive documents in its possession, custody or control, on October 21, 2015, plaintiffs served BTMU with a Rule 45 deposition subpoena, seeking a 30(b)(6) designee to testify regarding the Iranian Accounts maintained by BTMU. Ex. F to Tolchin Decl. Plaintiffs anticipate that the 30(b)(6) deposition will assist them with their judgment enforcement efforts and provide information to support plaintiffs' arguments herein concerning specific personal jurisdiction.

Counsel conferred regarding the Citation and the document and deposition subpoenas. While plaintiffs' counsel was willing to discuss BTMU's specific objections to terms and definitions, the parties were unable to reach any agreement as to BTMU's compliance due to BTMU's position that it is not subject to personal jurisdiction in this Court with regard to documents and assets located in branches outside of Illinois. Tolchin Decl at ¶¶ 10-14. Thus, while BTMU maintains accounts for the Judgment Debtors and is in possession, custody or control of responsive documents, it has refused to even conduct a search for those documents. Moreover, BTMU has refused to consent to a 30(b)(6) deposition concerning those accounts, leaving plaintiffs with no choice but to file this Motion to Compel.

## ARGUMENT

**A. Plaintiffs are Entitled to Broad Judgment Enforcement Discovery Under Both Federal Law and Illinois State Law**

Judgment enforcement proceedings in Federal cases are governed by Federal Rule 69, which provides that such proceedings must "accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Under Illinois state law, such supplementary proceedings are governed by 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277 ("Illinois Rule 277"). *See Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102, No. 11 C 1094, 2012 WL 851546 (N.D. Ill. Mar. 13, 2012). "[T]he purpose of a citation proceeding … is to allow the judgment creditor to examine a third-party 'to discover assets or income of the debtor.'"[1] *JP Morgan Chase Bank v. PT Indah Kiat Pulp and Paper*, No. 02 C 6240, 2012 WL 2254193, at *1 (N.D. Ill. June 14, 2012). Accordingly, a citation may require production of responsive documents in the third party's possession or control. *Id*. (*citing* Ill. Sup. Ct. R.277(c)(4)). Illinois Rule 277 expressly authorizes both document discovery and 30(b)(6) type deposition discovery. Ill. S. Ct. R. 277(c)(3) and (4). *See also Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1223 (7th Cir. 1993) (noting Illinois law allows deposition testimony of third parties "regarding the existence and whereabouts of assets that might be used to satisfy the judgment…"). In addition, Federal Rule 69 permits the judgment creditor to obtain discovery from any person in aid of execution via both Federal and State discovery mechanisms. Fed. R. Civ. P. 69(a).

Both Federal Rule 69 and 735 ILCS 5/2-1402 permit broad discovery in aid of judgment enforcement. "The rules governing discovery in post-judgment execution proceedings are quite permissive." *Republic of Argentina v. NML Capital, Ltd*., 134 S. Ct. 2250, 2254 (2014); *see also Vera v. Republic of Cuba,* 91 F. Supp.3d 561, 569 (S.D.N.Y. 2015); *Lumber Liquidators, Inc. v. Sullivan*, 939 F. Supp. 2d 57, 59 (D. Mass. 2013) ("Liberal discovery is afforded to judgment creditors under Federal Rule of Civil Procedure 69(a)(2)."). The principal constraint for Rule 69

---

[1] Service of a Citation also has the effect of creating a lien on the subject assets. *Id*. Citing 735 ILCS 5/2-1402(m)(1).

judgment enforcement discovery is that it is "calculated to assist in collecting on a judgment." *EM, Ltd. v. Republic of Argentina*, 695 F.3d 201, 208 (2nd Cir. 2012) (noting that it is not unusual for judgment creditor to seek information concerning assets outside jurisdiction of court where discovery request is made); *Broaddus v. Shields,* No. 08 C 4420, 2012 WL 1144664, at *2 (N.D. Ill. Apr. 5, 2012) (noting that Section 2-1402 is to be "liberally construed," giving courts "broad powers" both for discovery and attachment).

### B. Under United States Law, Plaintiffs are Entitled to Enforce Their Judgments Against the Assets at Issue

Plaintiffs' judgments are enforceable under TRIA § 201, legislated in 2002 to enable judgment creditors to satisfy their judgments "from the frozen assets of terrorist parties." 148 Cong. Rec. S11528 (daily ed. Nov. 19, 2002) (statement of Sen. Harkin). TRIA § 201 uses the term "blocked assets," which according to the legislative history, includes

> any asset with respect to which financial transactions are prohibited or regulated by the U.S. Treasury under any blocking order under the [TWEA], [the IEEPA], or any proclamation, order, regulation or license. *Id.*

There is no territorial limitation under TRIA § 201. Thus, to the extent the accounts at issue are subject to any United States blocking statute, they are subject to enforcement under the TRIA. One of the purposes of plaintiffs' discovery is to obtain information about whether the accounts at issue are "blocked" within the meaning of TRIA.

Plaintiffs' judgments are also enforceable under FSIA § 1610(g), enacted in 2008 in a further effort to expand the property subject to judgment enforcement against state sponsors of terror. Section 1610(g) allows § 1605A judgment creditors, like plaintiffs, to enforce their judgments against the "property of an agency or instrumentality" of a state sponsor of terror. 28 U.S.C. § 1610(g). As it relates to Iran, this includes the Iranian Accounts at issue here in the

name of the Central Bank of Iran, the Naftiran Intertrade Company, the National Iranian Oil Company and the National Iranian Tanker Company.

Unlike §§ 1610(a) and (b) which expressly provide that they apply to "property in the United States," nothing in the language of § 1610(g) suggests that is limited to property in the United States. Moreover, in addressing the interrelationship between § 1610(g) and §§ 1610(a) and (b) on a different issue, the 7th Circuit found that § 1610(g) is independent of §§ 1610(a) and (b) and that the limitations in §§ 1610(a) and (b) should not be read into § 1610(g). *See Wyatt v. Syria*, 800 F.3d 331, 343 (7th Cir. 2015) (notice requirement in FSIA § 1610(c) does not apply to § 1610(g)); *see also Bennett v. Islamic Republic of Iran*, Case No. 13-15442 (9th Cir. 2015)(same). Therefore, § 1610(g) permits enforcement against the accounts at issue here, even if such assets are located outside the United States.

In any event, intangible assets, such as bank deposits have no situs and are subject to execution wherever jurisdiction can be obtained over the judgment debtor's debor – in this case, the bank. *See Gates v. Syrian Arab Republic*, No. 11 C 8715, 2013 WL 1337241, at *2-3 (N.D. Ill. March 29, 2013). Therefore, even if § 1610(g) were read to include a territorial limitation (which it should not be), such limitation is satisfied here because the asset is "located" wherever the bank is subject to jurisdiction. *Id. See also Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 371-372 (5th Cir. 2004) (Situs of debt owing to foreign sovereign, for purpose of deciding whether these payments were subject to execution under FSIA, was situs of prospective garnishee); *FG Hemisphere Associates, LLC v. Republique du Congo*, 455 F.3d 575, 589-590 (5th Cir. 2006) (same).

However, even if this Court ultimately were to find that the overseas financial accounts about which plaintiffs seek discovery and execution are not subject to enforcement under either

TRIA § 201 or FSIA § 1610(g), such assets could be subject to enforcement under the law of another jurisdiction. Accordingly, under the Supreme Court's ruling in *NML Capital,* plaintiffs are still entitled to discovery with respect to those assets. *See Republic of Argentina v. NML Capital, Ltd*., 134 S. Ct. 2250 (2014) (Rule 69 discovery permitted as long as it could lead to information about executable assets).

### C.  BTMU Consented to Personal Jurisdiction in Illinois by Registering with The Illinois Division of Banking

BTMU has consented to personal jurisdiction in Illinois by registering as a Foreign Banking Corporation under Illinois banking law. Foreign Banking Corporations are governed by the Illinois Foreign Bank Office Act which provides that in order to conduct business in Illinois, foreign banks are "subject to the same duties, restrictions, penalties and liabilities imposed by the Illinois Banking Act." 205 ILCS 645/3. The Illinois Banking Act expressly provides that a bank organized under the act has the power to *sue and be sued*. 205 ILCS 5/5 (emphasis added). In addition, Sections 645/9 and 10 of the Foreign Bank Office Act require, as a condition to doing business in Illinois, foreign banks to maintain a registered office and appoint a registered agent in Illinois for service of process "in any suit, action or proceeding…" *See also* 205 ILCS 645/3.

By designating an agent for service of process, BTMU waived any objection to personal jurisdiction in Illinois. *See, e.g., Consumer Program Adm'rs, Inc. v. K.B. Parrish & Co., L.L.P.*, No. 09 C 3731, 2009 WL 4788681, at *3 (N.D.Ill. Dec. 9, 2009) (corporation waived objection to personal jurisdiction by designating agent for service of process in State); *Emp'rs Ins. of Wausau v. Banco De Seguros Del Estado*, 199 F.3d 937, 942–43 (7th Cir. 1999) (same); *See also Otsuka Pharm. Co. v. Mylan, Inc.*, No. 14-4508, 2015 WL 1305764, at *8-12 (D.N.J. Mar. 23, 2015) (same for New Jersey); *Forest Labs, Inc. v. Amneal Pharm., LLC*, No. CV 14-508-LPS, 2015 WL 880599, at *4-11 (D. Del. Feb. 26, 2015) (same for Delaware).

In a case similar to this one decided under New York law, the District Court for the Southern District of New York found that the foreign banks who registered to do business in New York had thereby consented to jurisdiction in New York for purposes of a judgment enforcement proceeding. *See Vera v. Cub*a, 91 F. Supp. 3d at 57-71. In so holding, the court stated:

> Contrary to BBVA's suggestions, *Daimler* and *Gucci* should not be read so broadly as to eliminate the necessary regulatory oversight into foreign entities that operate within the boundaries of the United States. There is no reason to give advantage to a foreign bank with a branch in New York, over a domestic bank. I cannot espouse a notion of jurisdiction that allows banks to hide information concerning assets connected to terrorism in other countries. When corporations receive the benefits of operating in this forum, it is critical that regulators and courts continue to have the power to compel information concerning their activities.

*Id*. The same reasoning applies to BTMU here.

### D. <u>Goodyear, Daimler and Their Progeny do not Apply to Rule 69 Judgment Enforcement Discovery</u>

The Supreme Court's decisions in *Goodyear Dunlop Tire Operations, SA v. Brown*, 131 S. Ct. 2846 (2011) and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), are not applicable to BTMU here. *Goodyear* and *Daimler* did not involve a discovery proceeding against a third party; they addressed the issue of when corporations can be haled into court *as a defendant subject to liability*. Here, unlike in *Daimler* and *Goodyear*, BTMU is not being sued as a defendant or being subjected to any kind of liability. Rather, BTMU is merely a third party subpoena recipient and the subject of Rule 69 judgment enforcement proceedings.

Neither the Supreme Court nor the Seventh Circuit Court of Appeals have held that the "at home" standard discussed in *Goodyear* and *Daimler* applies to a third party subpoena

recipient, which, unlike a defendant, does not face liability.[2] Indeed, the Supreme Court has held that Rule 69 affords judgment creditors with broad discovery, including of a judgment debtor's extraterritorial assets. *Republic of Argentina v. NML Capital, Ltd*., 134 S. Ct. 2250 (2014); *EM, Ltd. v. Republic of Argentina*, 695 F.3d 201, 208 (2nd Cir. 2012). Nothing in *Daimler* suggests that the Supreme Court intended to abrogate its prior holding in *NML Capital* or to narrow the scope of Rule 69 discovery. *See Vera v. Cuba*, 91 F. Supp.3d at 571-2 (requiring foreign bank to respond to subpoena seeking documents about assets located outside the United States). In the absence of any contrary binding precedent, it is appropriate for this Court to apply the traditional pre-*Goodyear/Daimler* "doing business" standard.

Applying the "at home" standard to subpoena recipients would lead to absurd results. For example, plaintiffs or judgment creditors in an Illinois state court proceeding would be unable to serve citations to discover assets on a third-party corporation with branch offices in Illinois, if that corporation were not also headquartered or incorporated in Illinois. Clearly, the "at home" standard does not apply to third parties. Due process is obviously satisfied here by the "doing business" standard because of BTMU's offices in Illinois and elsewhere in the U.S. *In re Automotive Refinishing Paint*, 229 F.R.D. 482, 487-90 (E.D. Pa. 2005) (when a subpoena is served in a federal case, the relevant forum for measuring the recipient's contacts is the United States as a whole).

### E. BTMU is Subject to Specific Personal Jurisdiction Here

In the alternative, this Court can exercise specific personal jurisdiction over BTMU based on the link between the documents and information sought, and BTMU's conduct. As noted,

---

[2] Even the Second Circuit's decision in *Gucci,* which concerned the application of *Daimler* in a prejudgment asset freeze context did not involve Rule 69 post-judgment enforcement proceedings. *See Gucci Am. Inc. v. Li*, 768 F.3d 122 (2nd Cir. 2014). In any event, *Gucci* is not binding on this Court.

because this is a federal case, the forum for determining personal jurisdiction is the United States as a whole and is not limited to the State of Illinois. *See In re Auto, Refinishing Paint*, 229 F.R.D. at 487-90. In *Gucci*, the Second Circuit remanded and directed the district court to engage in a specific personal jurisdiction analysis regarding the disputed subpoena. *Gucci*, 768 F.3d at 142. On remand, the district court found that specific personal jurisdiction existed. *Gucci Am., Inc. v. Weixing Li*, No. 10 Civ. 4974(RJS), 2015 WL 5707135, at *4 (S.D.N.Y. Sept. 29, 2015).

Here too there is a basis to exercise specific personal jurisdiction. Plaintiffs are victims of Iranian-sponsored terrorism who are seeking to enforce their judgments against Iranian accounts maintained by BTMU. Iran is subject to strict U.S. sanctions precisely because of its continued support for terrorism which harms the United States as a whole. The threat of Iranian-sponsored terrorism to the United States was confirmed, *inter alia*, by Pat O'Brien, Assistant Secretary in the U.S. Department of the Treasury, in Congressional testimony June 22, 2006. He noted the Executive Branch's intention to "draw on all instruments of national power to combat ***the very real threat posed by Iran's sponsorship of terrorism***" and further explained that:

> At Treasury, we are focused on the support networks, trying to identify and sever the lines of support that fuel terrorist activities. ***Stopping the money flows is particularly challenging in this instance, as Iran draws upon a large network of state-owned banks***.

Ex. L to Tolchin Decl.

Similarly, in a 2008 Advisory, the U.S. Treasury's Financial Crimes Enforcement Network (FinCEN) explained the danger of Iran's exploitation of world financial system to evade sanctions in order to conduct terrorist financing:

> [] the Government of Iran's continued attempts to conduct… terrorist financing…Through state-owned banks, the Government of Iran disguises its involvement in … terrorism activities through an array of deceptive practices specifically designed to evade detection. The Central Bank of Iran and Iranian commercial banks

11

have requested that their names be removed from global transactions in order to make it more difficult for intermediary financial institutions to determine the true parties in the transaction. …

Ex. M to Tolchin Decl.

It is Iran's exploitation of the world financial system to further its support for terrorism which has led it to be subject to United States sanctions. As Undersecretary of the Treasury for Terrorism and Financial Intelligence Stuart Levey stated in July 2007:

> The [Iranian] regime does use its banks to pursue … its funding of terrorism … we in the United States have taken action against Bank Saderat for its role in funneling money **from the Central Bank of Iran** to terrorist organizations [including] Hezbollah … Iran not only uses its banks for that purpose, but also **its banks engage in deceptive practices in order to engage in that business.**

Ex. N to Tolchin Decl.

Based on what plaintiffs know, BTMU has purposefully availed itself of banking opportunities in the United States to conduct illegal transactions with Iran and to assist Iran to evade U.S. sanctions. *See* Ex. G to Tolchin Decl. This is exactly the kind of activity that enables Iran to support terrorism and which U.S. sanctions were designed to prevent. Such conduct harmed the United States. Indeed, by violating U.S. sanctions, BTMU was subjected to hefty financial fines and penalties in the United States.

Just as BTMU's violations of U.S. sanctions concerning Iran rendered it subject to penalties in the United States – because such conduct impacts and harms the United States – such conduct also renders it subject to the jurisdiction of United States courts to produce documents and information related to its provision of financial services to Iran. As stated above, plaintiffs are not seeking to hold BTMU liable as a defendant in a U.S. court, but are simply attempting to obtain discovery concerning the Judgment Debtors' assets.

Ultimately, the issue of specific personal jurisdiction is inextricably bound up with the merits of plaintiffs' discovery requests, *i.e.*, with the question of which documents, information and assets BTMU is holding. Therefore, alternatively, if the Court has any doubts about its jurisdiction over BTMU, it should order BTMU to produce documents, either *in camera* or subject to a confidentiality agreement, concerning the financial services it provides or provided the Iranian entities specified herein. *See Univ. of Illinois v. Total Commc'ns Sys. Co.*, No. 85 C 8565, 1986 WL 9179 (N.D. Ill. Aug. 15, 1986) (where personal jurisdiction is intertwined with facts of the merits, proof of jurisdiction may be left for trial). After viewing the documents, the Court will be able to determine whether it has specific personal jurisdiction over BTMU.

Or, further in the alternative, BTMU should be ordered to produce a witness pursuant to plaintiffs' Rule 30(b)(6) request, who will testify regarding documents, information and assets that BTMU is holding to the extent necessary to determine the jurisdictional question. It is elementary that a court has jurisdiction to determine its own jurisdiction; and since jurisdictional discovery is permitted and proper even in a suit to determine liability, all the more so here where liability is not an issue.

**F.** **The Court should compel BTMU's Compliance with the 30(b)(6) Deposition Subpoena**

Finally, BTMU should be compelled to comply with the deposition subpoena served on it on October 21, 2015 pursuant to Federal Rules 45, 69 and 30(b)(6). The deposition subpoena seeks testimony from a designated corporate officer about the financial accounts maintained by BTMU for the following specified entities – Iran, Central Bank of Iran, the Naftiran Intertrade Company, the National Iranian Oil Company and the National Iranian Tanker Company. Such testimony will assist plaintiffs to identify assets against which they may enforce their judgments and to proceed against those assets.

13

BTMU is subject to this Court's jurisdiction because it operates a branch office in Chicago. *See Wultz v. Bank of China, Ltd.*, 298 F.R.D. 91, 98 (S.D.N.Y. 2014) (ordering non-party Israeli bank with to comply with Rule 45 subpoena seeking 30(b)(6) witness served on its New York branch). BTMU is an *entity* on which the Rule 30(b)(6) testimonial Subpoena was served, and it operates in Illinois and was properly served on its Chicago branch. If BTMU does not have a knowledgeable witness in Chicago, Rule 30(b)(6) requires BTMU to "educate its designee concerning all 'reasonably available' information, even if such information is not within the knowledge of the corporation's current employees." *Chicago Regional Council of Carpenters Pension Fund v. Woodlawn Cmty.Dev. Corp.*, No. 09 CV 3983, 2011 WL 6318605, at *4 (N.D. Ill. Dec. 15, 2011) (sanctioning party for failing to prepare its 30(b)(6) witness); *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 338, 343 (N.D. Ill. 1995) (party should have prepared its 30(b)(6) witness); *see also Coryn Group II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 238 (D. Md. 2010) ("[T]he corporation is expected to create a witness…with knowledge, and in so doing must make a good faith effort to find out the relevant facts – to collect information, review documents, and interview employees with personal knowledge."); *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146-47 (10th Cir. 2007) (discussing requirement to educate corporate designee.).

In *Wultz*, the District Court for the Southern District of New York ordered a non-party Israeli bank with a branch office in New York to designate a 30(b)(6) witness in response to a Rule 45 subpoena. *Wultz*, 298 F.R.D. at 98.The Court rejected the bank's argument that it could not be required to produce a witness where the only witness with knowledge was located in Israel. *Id*. The court held that the bank was required to educate a witness in New York, stating: "A person in New York can easily be educated by a person in Israel by telephone, email or videoconference…" *Id*.

14

The court also noted that the parties could conduct the deposition by videoconference. Here, too, BTMU can easily educate its witness in Chicago. Alternatively, plaintiffs have no objection to taking the deposition in New York or by videoconference if that would be more convenient for BTMU. *See Comm-Tract Corp. v. N. Telecom, Inc*., 168 F.R.D. 4 (D. Mass. 1996) (modifying Rule 45 deposition subpoena to require third party witness to submit to videotape deposition in Hong Kong); *see also Matthias Jans & Assoc., Ltd. v. Dropic*, No. 01-MC-26, 2001 WL 1661473 at *3 (W.D. Mich. April 9, 2001) (modifying subpoena to require recipient to appear "at a place to be agreed upon by all counsel, no greater than 100 miles" from her residence).

BTMU has not only refused to search for and produce responsive documents in its possession custody and control, but it is refusing to designate a 30(b)(6) witness to testify with regard to the Judgment Debtors' accounts, leaving plaintiffs with no recourse.

### E.  Conclusion

Based on the foregoing, plaintiffs respectfully request that the Court grant the Motion to Compel.


Dated:  October 30, 2015                          Respectfully submitted,

                                                  _____
                                                  Robert J. Tolchin
                                                  111 Livingston Street, Suite 1928
                                                  Brooklyn, New York 11201
                                                  (718) 855-3627
                                                  Rtolchin@berkmanlaw.com

15

## **<u>CERTIFICATION</u>**

I hereby certify that on October 30, 2015, this motion was served via ECF on all counsel of record.

/s/ Robert J. Tolchin

_____